A. F. DAVIS ET AL. V. J. C. MITCHELL ET AL.

(Case No. 2227)

1. BOUNDARIES—ESTABLISHMENT—LIMITATION—EVIDENCE—B. and W. divided a tract of land between them, in 1847, and each gave to the other a deed to the part assigned him  In both deeds, the two lines dividing the tract were described in the same way, and intersected each other in the midst of the tract at a point identified only by course and distance and a call for a stake. Plaintiff owned that portion of the B. part adjacent to the dividing lines, and defendant that portion of the W. part adjacent to one of those lines. *Held :*

(1) That if B. and W. ran out and marked the division lines, about 1847, and they and their privies afterwards acquiesced in and acted upon such delineation, defendant could not set up a new dividing line in 1881 ;

(2) If B. and W. did not run out the lines upon the ground, but some one claiming under one of them did, and that designation was accepted and acquiesced in for a number of years by the successive owners of the two parts, the boundaries were as well established as if the lines were run by B. and W.

(3) If the lines were not run out or marked until 1881, plaintiff was entitled to recover, if, upon an extension of the division lines, according to the calls in the deeds between B. and W., the true location of the one in controversy was found where plaintiff claimed it to be;

(4) See opinion for testimony held sufficient to require a submission to the jury of the question, whether, independent of the recognition of a division line between the B. and W. tracts, a division according to their deeds would not put the line in controversy where the plaintiff claimed.

(5) See opinion for proof of possession held not sufficient to warrant any charge in plaintiff's behalf of title by limitation.

(6) Plaintiff having introduced evidence to the effect that defendant's vendor had recognized and stated that the dividing line was the one claimed by plaintiff, defendant could testify to statements made by his vendor to the effect that he did not know where the dividing line was.

APPEAL from Fort Bend. Tried below before the Hon. Wm. H. Burkhart.

Suit by appellants in the usual form of trespass to try title, against appellees, for the upper half of the lower half of the quarter of a league of land in Fort Bend county, granted to J. W. Moore. Appellee Mitchell answered, setting up a mistake in the original survey, by which the upper line of the Moore quarter was some three or four hundred yards lower down the river than it had been supposed to be, and claiming the right, which he exercised, to abandon his upper line and drop down upon plaintiffs'. Plaintiffs replied that they, and those under whom they claim, had been in actual possession, under a regular chain of title from the sovereignty of the soil to themselves, duly registered, with lines plainly marked, for more than forty years, and that it was too late to correct the lines, even if there had been a mistake originally, which they denied. Upon the trial of the case the jury found in favor of defendant.

Mitchell was permitted to tell the jury that Thompson, his vendor, told him he did not know where his lines were; that Autney, from whom he bought, once had a camp at a certain point on the land; that a Dutchman had come up there surveying, and he (Thompson) ran him off, etc.

*W. L. Davidson,* for appellants, on evidence, cited: Thurmond v. Trammell, 22 Tex. 257; Johnson v. Northcutt, 49 Tex. 444; 1 Greenl, sec. 103; Hunter v. Waits, 11 Tex. 85; Sims v. Chance, 7 Tex. 561; Diker v. Miller, 24 Tex. 417.

On the question of the dividing line, he cited: Medlin v. Wilkins, 60 Tex. 409; Davis v. Smith, 61 Tex. 18; Fortrand v. Ellis, 58 Tex. 245; Heffner v. Downing, 57 Tex. 576; Oliver v. Mahoney, 61 Tex. 610; Brownson v. Scanlan, 59 Tex. 222; Cooper v. Austin, 58 Tex. 494; Morrill v. Bartlett, 58 Tex. 644.

No briefs on file for appellees.

ROBERTSON, ASSOCIATE JUSTICE.—Buckley and Wilson compromised their controversy over one-fourth of a league granted to Moore, by dividing it between them. Buckley conveyed his interest in the upper half to Wilson, and Wilson conveyed his interest in the lower half to Buckley. In both deeds, made in 1847, the two lines dividing

the two parts of the survey, were described in the same way. These two lines, as described in the deeds, intersect each other in the midst of the tract, at a point not otherwise identified than by the course and length of the lines, and a call for a stake. The plaintiffs in this suit owned that portion of the Buckley part which was adjacent to these division lines. The defendant Mitchell owned the part of the Wilson half adjacent to that one of the division lines running north and south. The location of this line was the matter in controversy. The two lines contended for by the respective parties are parallel with each other, and about three hundred yards apart, and the space between them is the land in dispute.

If Buckley and Wilson, not only divided the land between them, but also actually ran out and marked the division lines, about the year 1847, and they and their privies have since acquiesced in and acted upon such delineation, until the defendant, in 1881, set up a new line, the plaintiffs, claiming by the old line, were entitled to recover. The court below fully comprehended this theory, and, fairly enough, submitted it to the jury.

If Buckley and Wilson did not extend their lines upon the ground, but some one claiming under one of them had the lines run out and marked, and this designation was accepted and acquiesced in for a number of years by the successive owners of the two parts, the boundary would be just as well established as if the lines were run by Buckley and Wilson. There was evidence tending to show that Herndon, whilst the owner of the Buckley half, had it surveyed and subdivided by a deputy surveyor, Henry W. Stamm, and his notes of the lines were recorded in October, 1852. If this surveyor actually ran the line in dispute just above the McCray house, and, as thus located, the line was accepted and acted upon from 1852 until 1881, it could not be disturbed. This theory was not submitted to the jury; it was sufficiently supported by testimony to justify its submission, and if sustained the plaintiffs would have recovered.

But, if no line had ever been run out or marked until 1881, the plaintiffs would still be entitled to recover, if, upon an extension of the division lines, according to the calls in the deeds between Buckley and Wilson, the true location of the one in controversy should be found where the plaintiffs claim it to be. To justify and require the submission of this issue, there was certainly no lack of evidence on the plaintiffs' part. The plaintiffs' contention is undoubtedly right if the northwest corner of the Moore survey is really where it is described to be in Thompson's first deed to defendant. That this was the northwest corner, seems to have been the accepted opinion from

1843 until shortly before 1881. General Somerville pointed it out as the corner to Geo. W. Pleasants in 1843. Pleasants lived upon the land from 1843 until 1871, and always regarded that as the corner. Thompson, who sold to the defendant, lived on the land from 1853 until 1872, and he always claimed that to be the true corner. He had it enclosed during that long period, and when Schley made the survey of defendant's tract, Thompson pointed out this spot as the north-west corner. Schley began at that corner as the true corner, and states in his field notes, as contained in Thompson's deed to defendant, that the bearing trees had caved into the river, but that the point was still identified, and in his testimony he says he found there an old line. The defendant himself recognized it as the corner until his controversy with Newell.

On the other hand, Schley now considers the corner three hundred yards further down the river. He reached this conclusion in making a resurvey for defendant in 1881. He ran a line across the Scott and Moore surveys, and found that the actual aggregate width was equal to the sum of their breadths, as indicated by the field notes, and that in the aggregate area is the full number of acres accorded to both in the grants. He also ascertains that fixing the dividing line between these surveys three hundred yards below the old marked line and the recognized corner, leaves in the Moore tract its full *quantum* of land. These seem to be the main premises supporting his later conclusion. This reasoning depends upon a degree of faith in the infallibility of the chain and compass not generally entertained by minds familiar with land litigation in Texas.

The true line between the Scott and Moore surveys is that traversed by the surveyor who made the original surveys, even if it leaves in the one a greater and in the other a less area than its field notes describe. Mr. Schley's measurements may be very much more accurate than his ancient predecessors, but the object of the resurvey is not to correct, but to find the old lines. An old marked line, no more than three hundred yards from where it ought to be, affords strong grounds for opposing the views of Mr. Schley.

Without expressing or indicating any opinion as to where the north-west corner is, there was certainly sufficient testimony supporting the plaintiffs' side of the issue to make it a question for the jury, whether, independent of the recognition of a division line between the Buckley and Wilson tracts, a division according to their deeds would not put the line in controversy where the plaintiffs contend that it is. This question was not submitted to the jury, but, in effect, was determined by the court in the defendant's favor.

There was no sufficient proof of possession to warrant any charge, in plaintiffs' behalf, of title by limitation. The possession by McCray, Smith and Herndon, (through Gaul), was only from 1847 to 1857. In 1853, Thompson moved upon the Wilson part, and from that time on, the adverse possession would be confined to the McCray improvement. If this improvement was actually on the Buckley part of the land, the plaintiffs need no aid from the statute of limitations; if it was on the Wilson part, possession by its occupancy would, after Thompson, as the owner of the Wilson part, moved upon it, be restricted to the actual adverse holding, (Parker v. Baines, Galveston Term, 1886), the extent of which is not disclosed by the proof. Only the ten years' statute would avail the plaintiffs, as they had no deed or muniment of title to any part of the Wilson half. The evidence of continuity of possession from 1847 to 1857, if the plaintiffs could derive any benefit of the occupancy from 1853 to 1857, except as to the actual improvement, is by no means satisfactory, as presented in the record here. It is stated that McCray conveyed to Smith, and that the deed was in evidence, but a witness says that McCray died in the McCray house, and that his administrator conveyed to Smith. Whether any one had possession between the date of McCray's death and the entry by Smith, or what the length of this interval was, does not appear. From the statement of the title papers in evidence, Smith owned the land only a little over one month, but a witness says he was in possession a year or two. For whom he held possession before he acquired or after he parted with his title, is not explained.

There was no error in allowing the defendant to testify to the statements made by Thompson about the line in controversy. These statements were fairly in rebuttal of the testimony offered by the plaintiffs, to the effect that Thompson always recognized, and often stated, that the division line between his land and the Gilbert tract ran just above the McCray improvement. The plaintiffs themselves instituted the issue as to where Thompson considered this line to be, and proved his repeated declarations. In the statement of facts, what is probably the strongest quotation from Thompson, is set down as the testimony of the defendant, and not as a statement of Thompson, testified to by the defendant.

The errors pointed out make it necessary that the judgment below be reversed and the cause be remanded, and it is so ordered.

REVERSED AND REMANDED.

[Opinion delivered March 9 , 1886.]