[No. 1660.]

JOHN Q. ADAMS, APPELLANT, v. EVALINE A. CHILD, RESPONDENT.

EJECTMENT—NON-SUIT—STATUTE OF LIMITATIONS.

1.  Where plaintiff in an action of ejectment put in evidence only as to the ownership of the property in dispute a mere paper title, to wit, patents from the United States to his predecessors in interest and conveyances, mean and direct, from them to him, and then rested, and said plaintiff, upon a motion for a non-suit, was given an opportunity to present evidence of an agreement between the parties, their grantors or successors, and which offer plaintiff refused to avail himself of: *Held*, that the trial court did not commit error in granting the motion for non-suit.

2.  The authorities are abundant to the point that where coterminous proprietors of land, having established a division line, and having acquiesced therein for at least a time prescribed by the statute of limitations, although it may not be the true line according to their deeds, they are, nevertheless, precluded from claiming that it is not the true line.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Douglas County; *M. A. Murphy*, District Judge.

Action by John Q. Adams against Evaline A. Child in ejectment.   From a judgment of non-suit in said action of ejectment, plaintiff appeals.   **Affirmed.**

The facts sufficiently appear in the opinion.

*Alfred Chartz*, for Appellant:

I.   Appellant on the trial put in evidence his title, being in the form of patents, deeds, and judgments and decrees, which title is not disputed, and which leaves John Q. Adams the owner in fee of the lands described in the complaint. Plaintiff then rested.   Defendant, without giving notice, moved a non-suit, and plaintiff moved the court for a decree that plaintiff is the owner described in the complaint.   Plaintiff's motion was denied, and plaintiff excepted, and defendant's motion of non-suit was granted, and plaintiff excepted. The court offered plaintiff to permit him to reopen his case if he desired to introduce further testimony, but plaintiff refused the offer.   The appeal is from the order dismissing the action and granting the motion for non-suit.

II.   Plaintiff claims to be the owner in fee and entitled to the possession of all the lands described in his complaint at lines 25, *et seq.*, page 35, of his statement.   Plaintiff proved that allegation was true, and he asked the decree of the court that he was so the owner in fee and entitled to the possession of said lands.   Plaintiff is not entitled to any judgment for damages, because he offered no proof on that point.

It is respectfully submitted that the order dismissing plaintiff's action and non-suiting plaintiff should be reversed, and that the appellate court should order the lower court to enter a decree that the plaintiff is the owner and entitled to the possession of the lands described in his complaint, and in conformity with the proofs made and undisputed.

The appellate court cannot order a new trial, because none is asked, and the question is not involved.   The only question involved is, whether under the proofs made plaintiff is entitled to a decree that he is the owner in fee and entitled to the possession of the lands described in the complaint.

Under Comp. Laws, 2515, this court has the power to order decree entered in accordance with the undisputed facts of a case.   There is nothing left to try.   The patents are in evidence, and the title is not in dispute.

True, defendant pleaded prescription and prescriptive title (but pleaded the same defectively), but no testimony was offered to support such plea, and this court must assume in

the face of the record that defendant had no testimony to offer in support of her plea, or she would have made such proof.

III.   Defendant has submitted herself and her contention for decision, and the lower court held that plaintiff had not made out a case. ' The case made, and the issue was whether plaintiff was the owner in fee and entitled to the possession of the lands described in the complaint.  All other questions are subordinate to that question.  Minor and subordinate questions cannot control the paramount question, if the paramount question is greater than the aggregate of all subordinate questions.

IV.   Defendant, by moving for a dismissal of the action and non-suit, stood upon the record made, and impliedly avowed to the court that she had nothing and no testimony to prove the record made untrue, and avowed to the court that she could not sustain the allegations of her complaint in attempting to plead a prescriptive title.  Under the facts the appellate court is not justified in prolonging litigation, and put the parties, or either, to further expense by simply overruling the order of the lower court, but is justified in settling the controversy on the case made.

*Samuel Platt* and *D. W. Virgin*, for Respondent:

I.   An examination of the complaint in this action will show that about the year 1856 the plaintiff and defendant built a line fence between their respective properties.  This was about forty-seven years before the action was commenced.  The complaint also shows that no effort was made to disturb the line of this division fence until the month of May, 1903, about forty-seven years after the fence was built. The complaint also shows that the plaintiff and defendant, and their predecessors. and grantors in interest, occupied the lands up to the division fence under an agreement by the terms of which the line should be squared according to the government survey, and, should the survey disclose that the fence was not on the line, it should be removed to conform with the government line.  The complaint alleges that the government survey was made in the year 1863, and that

no suggestion or effort had been made by either party to remove the fence under the terms of the alleged agreement until May, 1903, a period of about forty years after the survey. The complaint admits the possession of the defendant, her predecessors and grantors in interest, without protest or disturbance on the part of plaintiff, his predecessors or grantors in interest, from the year 1856 up to the year 1903, a period of about forty-seven years. The complaint admits and alleges as above, and sets up further, as a matter of affirmative proof, that plaintiff relies upon the agreement aforesaid to establish his right to remove the division fence in accordance with the government survey.

II. The plaintiff offered no testimony whatever in support of his agreement. The court permitted him to reopen his case to do so. He refused. The order granting defendant a non-suit was then made and entered. The court was right in making the order, and abundance of authority follows to prove it.

III. Plaintiff having admitted, and defendant not having denied, defendant's possession up to the line fence for forty-seven years, this allegation in the complaint has the force of an agreed statement of fact. Defendant's actual possession for the time and in the manner above set forth was established to the satisfaction of the trial judge when the pleadings were read in open court. Plaintiff pleaded that the fence was originally built in 1856 and that under an agreement it was to be subsequently removed. Unless there had been such agreement, plaintiff knew that occupation and possession by defendant up to the line fence for so long a time (as admitted in the complaint) fixed the boundary as permanent. It was immaterial who had paper title to the lands on either side of the fence. Such a period of acquiescence admitted an undisputed title and fixed the boundary, whether the legal title was in plaintiff or not. Defendant's possession had to be explained away. The burden of proof was upon the plaintiff so to do. He simply offered proof of his legal title and rested his case. Under the agreed statement of facts, the court could never have placed him in possession, for the admitted occupancy and possession of the

defendant established a legal boundary between the adjacent properties, which could never have been disturbed by the mere introduction of the testimony offered. Plaintiff pleaded the agreement between the parties, but offered no testimony to substantiate it. He failed to explain the possession of the defendant. He submitted no testimony whatever upon the point. It was an affirmative allegation and he abandoned it. He proved nothing that even tended to establish his case, and the court was eminently justified in dismissing the suit. The presumption is that possession of land, unexplained, is adverse.

IV. In an action for possession of land which has been held for more than twenty years, where there is no evidence that his possession was permissive or in subordination of plaintiff's rights, it is presumed to be adverse. (*Alexander* v. *Gibbon*, 118 N. C. 796, 24 S. E. 748; *Bryan* v. *Spivey*, 109 N. C. 57, 13 S. E. 766; *Satcher* v. *Grice*, 53 S. C. 112, 31 S. E. 3.) Acquiescence for more than thirty years in a division line precluded either party from setting up a new line. (*Davis* v. *Mitchell*, 65 Tex. 623.) The acquiescence by an owner of land, manifested by silent assent or submission with apparent counsel, for a period of upwards of sixteen years, in the location of a fence as the division line between the land and that of the adjacent proprietor operates to estop him from questioning the correctness of the location. (*Burris* v. *Fitch*, 76 Cal. 395, 18 Pac. 864.) A party setting up an agreement settling the boundary line between adjacent tracts must prove affirmatively the agreement relied on. (*Jones* v. *Pashby*, 7 Mich. 459, 35 N. W. 152.)

V. If adjoining owners occupy their lands with reference to a certain dividing line with intent to claim up to such line, mere passive acquiescence will be sufficient to make such line binding, it being unnecessary that there be an express agreement or acts amounting to an implied agreement. (*Linden* v. *Hodnett*, 22 Fla. 454.) Where a division fence between adjoining owners has been in existence and acquiesced in by the parties as on their dividing line for more than forty years, the law will determine the line of such fence to be the true line between the parties; and this

notwithstanding the fence was originally put up under an
agreement that it was to be altered at some future time in
case it should be found, upon actual survey, not to be on
the true line. (*Pearson* v. *Mosher*, 30 Barb. (N. Y.) 81.)
Where the parties have acquiesced in the location of a divi-
sion fence for twenty years and cultivated and improved the
premises on each side of the fence, it is binding without any
formal claim or color of title, though the location is errone-
ous. (*Dyer* v. *Aldridge*, 136 Ind. 654, 36 N. E. 522.) Where
a boundary line has been recognized and acquiesced in for
fifteen years, it will not be disturbed on new surveys. (*Dupont*
v. *Starring*, 42 Mich. 492; *Smith* v. *Hamilton*, 20 Mich. 438;
*Joyce* v. *Williams*, 26 Mich. 332.)

VI. Appellant in his opening brief expresses the opinion
that this court is justified in giving him an order compelling
the lower court to enter a decree in accordance with the prayer
of his complaint. The expressed belief is as unique as it is
presumptuous, and the reasons advanced therefor are as origi-
nal as they are untenable. Appellant contends that by mov-
ing for a dismissal defendant impliedly avowed to the court
that she had nothing and no testimony to prove the record
made untrue. What she did avow was that plaintiff, having
proved nothing tending to establish his case, should be thrown
out of court. This avowal appealed to the trial judge, and,
in granting the motion for a non-suit, he inferentially ordered
that it was unnecessary for the defendant to submit any proof.
This court cannot and would not grant an absolute order as
above, under the law of this case, even under the most favor-
able conditions for appellant. The defendant must have the
right to put in her case, should this court determine that the
trial judge has erred. To do otherwise would be to override
precedent in this state and in every other jurisdiction with
which we are familiar. It is only necessary to cite one author-
ity illustrating our view: "Where the court below granted
a non-suit, the case being submitted on complaint on an
undertaking and answer, the supreme court, while reversing
the judgment below, refused to enter judgment for plaintiff,
although the answer presented no defense, holding that, as
there was no trial below, the court could not know what

course defendants would have taken, by amendments or other-
wise, by way of defense to the action." (*McMillan* v. *Dana*,
18 Cal. 339.)

VII. An examination of the prayer of plaintiff's com-
plaint will show that he did not demand the relief that he
be adjudged the owner in fee simple of the land in contro-
versy. He simply prays for the possession of the land and
offers no testimony to show why the defendant (whom he
admits has been in possession for forty-seven years) should
be ousted. He seeks to remove a line fence, established and
acquiesced in for forty-seven years, and yet he makes no
demand in the prayer of his complaint for such relief, and
introduced no evidence to show why it should be removed.
The plaintiff pleaded an agreement as an excuse for the
removal of the common boundary, and yet when he comes
to trial he abandons it, candidly admitting that he cannot
establish the only fact which may give him a *prima facie*
right to run the fence along the government line. We sub-
mit that under the circumstances of this case, as disclosed
by the record, the trial judge did not err in granting the
order of non-suit.

*Alfred Chartz*, for Appellant, in reply:

I. Respondent complains that appellant has cited no
authorities. It is evident that counsel for respondent do not
consider the statutes of Nevada authority. It is this reck-
less disregard of the statutes which brings on trouble. The
proofs show that on May 2, 1870, Rufus Adams, predecessor
in interest and grantor of plaintiff, obtained patent to the
$S\frac{1}{2}$ of the $SE\frac{1}{4}$ of Section 34, a piece of which is in dis-
pute. (See Statement, p. 11.) That plaintiff on the 15th
day of December, 1870, obtained patent of the United States
to the $N\frac{1}{2}$ of the $NW\frac{1}{4}$ of Section 2, part of which is in
dispute, the first described land being in T. 14 and the second
in T. 13, and both in R. 19 E. (See Statement, p. 16.) The
other titles are not involved in the case. That on the 17th
day of June, 1879, a decree of distribution of the estate and
will of Rufus Adams, deceased, was duly made and entered,
vesting the above-described lands in plaintiff, subject to

conditions therein named. (See Statement, p. 22, *et seq.*)
That on the 16th day of April, 1898, plaintiff having per-
formed the conditions above named and referred to, a final
decree was made and entered vesting all said property in
plaintiff. (Page 27, *et seq.*) The complaint alleges, and the
answer admits, that on May 14, 1903, plaintiff began the
planting of posts, etc., then and there interrupting any pre-
scriptive title that might in time be set up. See page 36 of
statement for allegation of complaint and pages 41-2 for
allegation of answer on that question.

The complaint alleges at paragraph 1, page 35 of state-
ment, that plaintiff has been seized in fee and entitled to the
possession of said lands, and at paragraph 2 it describes the
manner of location made in 1856 of unsurveyed land, and
describes the land subsequently patented, including the
pieces in dispute. At paragraph 3, page 36, it clearly sets
up a permissive agreement of all the parties, as follows:

"3. That all the lands settled upon in Carson Valley,
Douglas County, prior to the government survey, were set-
tled in similar manner as the lands settled upon by plaintiff
and defendant's predecessors in interest and grantors, and
the settlers thereof made similar mistakes with reference to
their lines, and that upon surveys being made a general
meeting of settlers was held, and it was agreed amongst
them to square their lines in accordance with the public sur-
veys at the pleasure of either dissatisfied party, at any time,
and that said agreement has always been lived up to up to
the date of this suit, and became the common law in the
community where the lands of plaintiff and defendant are
situate, and that plaintiff and defendant's predecessors in
interest and grantors understood said agreement, and agreed
to square their lines in accordance with said government
surveys whenever deemed desirable by either party."

The last clause of the foregoing paragraph is emphasized
and proved by the documentary evidence. Step by step was
taken to obtain patents, without remonstrance, in accordance
with the foregoing agreement and allegation, and step by
step was taken by plaintiff down to April 16, 1898, in the
probate court to obtain the title of the man who obtained

the patent from the United States, and without remonstrance of any kind. It is respectfully submitted that this clearly established a permissive, as contradistinguished from an adverse, holding of the lands lying north of said line fence, and that when plaintiff on May 14, 1903, went upon the land to change the fence in accordance with his pleaded agreement, he had the right to believe there had been no adverse holding. At least, the proofs are fully sufficient to place defendant upon proof to the contrary, and sufficient to authorize the judgment and decree asked for on the trial, that plaintiff is the owner of said lands.

II. But, further: The answer pleads a permissive holding. It states facts showing a permissive holding, under different terms, and subsequently states legal conclusions that defendant held adversely. But the statement of facts will control over the legal conclusions. No authorities are cited in support of this position. I consider the citation of authorities on well-settled elementary principles an insult to the court, and the offense is increased with the ratio to the number of authorities cited. At page 41 of statement will be found defendant's version of the permissive agreement. The facts are fully stated, according to her viewpoint. It is respectfully submitted, under the facts stated at said page 41 with reference to the agreement of the parties, that defendant could not and did not hold said pieces of land north of said line fence "continuously and uninterruptedly, in the actual, peaceable, open, visible, notorious, exclusive, and adverse possession," as pleaded by her at page 42, or at all. It is submitted that the record clearly shows a permissive occupation of the land north of the described line fence, and that if the witnesses were all dead, on both sides, the record would be sufficient to establish the fact of permissive agreement and holding as against adverse holding.

The permissive agreement being alleged and admitted, its varying terms became a matter of defense. The main question at issue was, was it permissive? It is admittedly permissive.

III. A title by prescription is matter of defense and must be specially pleaded, just like the statute of limitations in

matter of debt. Of course, and I frankly admit it, if the complaint showed, as claimed by counsel in their brief, that there was a division line fence for forty-seven years, then it might be necessary to introduce proof that the land lying north of it was not held adversely. But in the case at bar the pleadings on both sides show that there was a positive permissive possession and no adverse possession, and the evidence proves it.

The numerous authorities cited by counsel tend to show that land held adversely, as prescribed by statute and defined by a division fence, is a good defense to an action for its recovery. But the holding must be adverse, and adverse holding is matter of defense. The burden is on the defendant to establish it. It is not favored by the courts. No authorities needed.

Counsel for respondent, at page 3, line 14, say, or write: "Defendant's possession had to be explained away. The burden of proof was upon the plaintiff so to do. He simply offered proof of his legal title and rested his case."

The foregoing shows clearly that counsel for respondent did not keep run of the facts contained in the documentary evidence, nor of the averments of the complaint and answer, which show conclusively a permissive use and occupation of the lands lying north of said division fence.

Counsel's mistake of the law is illustrated at page 3, lines 16 to 20, as follows: "Under the agreed state of facts the court could never have placed him in possession, for the admitted occupancy and possession of the defendant established a legal boundary between the adjacent properties, which could never have been disturbed by the mere introduction of the testimony offered." Counsel are laboring under the belief that mere occupancy and possession for the period prescribed by the statute is enough. But it is respectfully submitted that such occupancy and possession must be adverse, and not permissive in any sense of the term. The evidence shows a permissive possession for forty-seven years.

Suppose defendant and her witnesses should testify that the land in dispute has been held adversely, as prescribed by statute to entitle her to the right of possession,

what could she and her witnesses answer to the question: Why did you not object to the issuance of the patent of 1870, and the decrees of the probate court of 1879 and 1898, confirming title in plaintiff? The issuance of a patent masses title in the patentee, and so does a confirmation of title by a probate court confirm the title in the petitioner. So, the evidence shows that for forty-seven years the parties lived up to the terms of the agreement as pleaded in the complaint at page 36, paragraph 3, of statement.

The first six lines of page 2 of respondent's brief clearly admit that the agreement of the parties was a permissive possession of the land in dispute. I quote the admission for convenience:

"The complaint also shows that the plaintiff and defendant, and their predecessors and grantors in interest, occupied the lands upon the division fence under an agreement, by the terms of which the lines should be squared according to the government survey, and should the survey disclose that the fence was not on the line, it should be removed to conform to the government line."

It thus appears that counsel on both sides agree that the occupation of the lands lying north of the division fence was permissive; and the patents issued for said lands since said agreement and the judgments and decrees of the probate court, confirming the same down to recent date, without objection, proving that said occupation was permissive, it is difficult for me to conceive under what rule respondent can ask the court to declare that it was incumbent on plaintiff to prove that said land was not held adversely.

Plaintiff proved his fee-simple title, and proved a permissive agreement of possession on the part of defendant, sufficient to shift the burden of proof on defendant. Plaintiff did more: He absolutely proved by his chain of title that defendant held possession permissively, and that she thrice permitted plaintiff to obtain the best title the United States can grant and the best title a probate court can grant, without objection, down to April 16, 1898. Surely such proof can be downed only by testimony, and not by motion to non-suit.

Counsel's brief is based solely upon the point that a division fence existing for a number of years, adversely or unknowingly, establishes the rights of the parties on either side. This rule is not inexorable. However, that is not the question here. Permissiveness and adverse possession are the parties plaintiff and defendant to this action. Plaintiff claims permissiveness and defendant claims adverse possession. What do the proofs show? In the absence of any testimony to the contrary, they show permissiveness. There is no testimony whatever showing or tending to show adverse possession.

IV. It is respectfully submitted that under the pleadings and proofs it is firmly fixed that plaintiff is the owner of and entitled to the possession of the lands described in his complaint, and that to disprove it involves a denial of the allegations of the sworn answer of the defendant with reference to a permissive agreement and consequent perjury. The defendant swore to the allegations of the answer positively, and not on her information or belief, and to come into court again and swear that there was no such agreement would be swearing to yes at one time and no at another. There is no escape from the foregoing deduction.

It is therefore respectfully further submitted that the order of the appellate court should be based upon the facts of the case as presented by the record, and that defendant should not be permitted to change those facts and her sworn pleadings at the behest of her attorney, or at all, and that said order should be that judgment and decree be entered in the lower court that plaintiff is the owner of and entitled to the possession of the lands described in his complaint, and for costs.

"*Estoppel:* Where a defendant relies upon the defense of estoppel, he must, in his answer, allege the facts constituting the estoppel." (*Hanson* v. *Ohiatovich*, 13 Nev. 395.)

The complaint alleges that defendant held and possessed certain lands lying north of a certain fence permissively, and the answer admits that she held it permissively, but claims that she held permissively under different terms from the allegations of the complaint. Plaintiff did not need to prove

said land was held permissively, it being admitted, and it was for defendant to prove the terms.

After admitting the land was held permissively, the answer avers that defendant held that land "continuously and exclusively, openly, visibly, and peaceably, by claim of right and title, and adversely to and in hostility to said plaintiff and all the rest of the world." This is a marked contradiction of the facts which she states with reference to the agreement to deed and redeed for $1.25 an acre, and her statement of adverse holding, being mere conclusions of law, must melt away when rubbed up against her statement of facts. She does not state nor describe any line fence, or any use, occupation, and cultivation, upon which she seems to rely for proof of estoppel *in pais.* It is evident that her counsel rely upon the existence of a line fence, because their entire brief is devoted to the exposition of the law which follows the establishment of such a fence. Under the law it is the line fence that would constitute an estoppel, if it had not been maintained permissively, and therefore she has not alleged the facts constituting the estoppel. True, the fence is referred to in the complaint, but the terms under which it was maintained are alleged, and under the rule of this court in *Hanson* v. *Chiatovich, ante,* it was incumbent upon her to allege the facts constituting the estoppel which she attempted to plead.

"Where an estoppel is relied upon it must be pleaded with particularity and precision; in such plea nothing can be supplied by inference or intendment, and where the matter relied on is not thus specially and precisely alleged, it will not be estoppel. The estoppel must be pleaded fully and sufficiently in all respects, and with all necessary incidents. In short an estoppel must be certain to every intent." (Vol. 8, Ency. of Pl. & Pr., p. 9, and authorities.)

I believe it is difficult to find stronger language. The plea of estoppel in the answer is, like comprehension, left far behind. What is a continuous, exclusive, open, visible, peaceable, adverse, hostile possession? And what is possession? They are all words used in legal phraseology to express facts, and may be used in drawing findings of facts upon which to base conclusions of law.

V. The defendant avers that she has owned the said lands in fee. The undisputed proof is that plaintiff owns them by patents from the United States. It was a very careless pleading on the part of her counsel, for which they are more to blame than she. It is hardly to be presumed that she would have sworn that such allegation was true if she had understood the plea. The plea of permissive holding and the plea of prescription are inconsistent and irreconcilable pleas, and in view of the fact that the plea of permissive holding states the facts, and that the prescriptive plea states no facts, the appellate court must adopt the permissive plea as the only plea in the case.

By the Court, Fitzgerald, C. J.:

This is an appeal from a judgment of non-suit in an action of ejectment. Plaintiff's complaint contained the following allegations:

"1. That on the ..... day of ..............., the plaintiff was and ever since has been seized in fee and entitled to the possession of those certain pieces and parcels of lands situate in Douglas County, described as follows: All that certain piece lying north of a certain fence used as a line fence by plaintiff and defendant, within the S½ of the SE¼ of Section 34, T. 14 N., R. 19 E., and also that certain piece lying north of said fence within the N½ of the NW¼ of Section 2, T. 13 N., R. 19 E., all in M. D. B. and M., and containing 20 acres of land, more or less.

"That about the year 1856 plaintiff located upon then unsurveyed lands of the United States, and the predecessors in interest and grantors of defendant also located upon unsurveyed lands of the United States, and built said line fence described in paragraph 1, and that about the year 1863 said land were surveyed by the government of the United States, upon the survey of which it was ascertained that said line fence did not correctly follow section lines, but cut off and left to defendant's predecessors in interest and grantors the lands described in paragraph 1, but that subsequently plaintiff obtained patents and became the owner in fee and entitled to the possession of all the following-described lands

(here follows description of land including land in question).

"3. That all the lands settled in Carson Valley, Douglas County, prior to the government survey, were settled in similar manner as the lands settled upon by the plaintiff and defendant's predecessors in interest and grantors, and the settlers thereof made similar mistakes with reference to their lines, and that upon surveys being made a general meeting of settlers was held, and it was agreed amongst them to square their lines in accordance with the public surveys at the pleasure of either dissatisfied party, at any time, and that said agreement has always been lived up to up to the date of this suit, and became the common law in the community where the lands of plaintiff and defendant are situate, and that plaintiff and defendant's predecessors in interest and grantors understood said agreement, and agreed to square their lines in accordance with said government surveys whenever deemed desirable by either party."

"4. That on or about May ....., 1903, plaintiff began the planting of posts in accordance with said government surveys and in accordance with said agreement, and defendant and her agents forcibly ejected plaintiff from said occupation, and dug up and took away plaintiff's posts from their positions, and ousted and ejected plaintiff from his possession, and now unlawfully withholds the possession of the lands described in paragraph 1 of this complaint from plaintiff, to the damage of plaintiff in the sum of five hundred dollars."

The foregoing allegations of plaintiff's complaint are all that are material in determining the questions presented upon this appeal. Defendant, by her answer, admitted the location of the lands of plaintiff and defendant, the erection of the line fence, the subsequent survey of the land by the government, and the issuance of patents as alleged by plaintiff, but denied that plaintiff was, or ever had been, seized in fee, or otherwise, or entitled to the possession of the lands described in paragraph 1 of plaintiff's complaint, and denied particularly all the allegations contained in paragraphs 3 and 4 of plaintiff's complaint. Further answering, defendant averred that there was an agreement between the predecessors in interest of plaintiff and defendant that when

patents to the said land should be obtained that plaintiff's predecessors in interest should deed the said lands to defendant's predecessors in interest, and further that defendant and her grantors and predecessors in interest had held said lands adversely to plaintiff and to all the world for more than forty years prior to May, 1903, and down to this date, and that she was the owner of said land.

On these pleadings the parties went to the trial of the case. At the trial the plaintiff put in evidence paper title to the lands, to wit, patents from the United States to his predecessors in interest and conveyances, mean and direct, from them to him, and then rested.

Defendant thereupon moved for a non-suit on the ground that mere paper title alone under the facts stated was insufficient for a recovery, but that in addition evidence of the alleged agreement to surrender possession of the lands should be given, and that in the absence of such evidence, defendant's possession, being an adverse possession, would defeat the action. The trial court then ruled in favor of the defendant. The court then offered "to reopen the case" and permit plaintiff to put in evidence of his alleged agreement for the surrender of the possession of the lands. This offer was declined by the plaintiff, whereupon the court gave judgment of non-suit in favor of the defendant.

This ruling and judgment are assigned as errors here. I think the court did not commit error in either the ruling or the judgment. From the proofs and the facts admitted by the pleadings in this case, it appears without contradiction that from about the year 1856 to the year 1903 plaintiff and defendant and their grantors and predecessors in interest had acquiesced in the location of the line fence between their respective properties, and they had so acquiesced for a period of forty years or thereabouts after the location of the true line was known. The authorities are abundant to the point that where coterminous proprietors of land have established a division line between their respective properties and have acquiesced in its location for a time at least equal to that prescribed by the statute of limitations, although it may not be the true line according to the calls of their deeds, they

are thereafter precluded from claiming that it is not the true line. (*Burris* v. *Fitch*, 76 Cal. 395; *Cooper* v. *Vierra*, 59 Cal. 282; *Columbet* v. *Pacheco*, 48 Cal. 396; *Sneed* v. *Osborn*, 25 Cal. 626; *Pierson* v. *Mosher*, 30 Barb. (N. Y.) 81; *Dyer* v. *Eldridge*, 136 Ind. 654, 36 N. E. 522; *Dupont* v. *Starring*, 42 Mich. 492; *Davis* v. *Mitchell*, 65 Tex. 623.)

Counsel for plaintiff argues ingeniously, yet not logically, legally, or soundly, that the defendant and her predecessors in interest were in by a "permissive possession," inasmuch as the defendant alleges that there was an agreement as to the land, and that therefore the burden was on the defendant to show what that agreement was. The defect in this argument is this: The agreement as alleged by the defendant was that the defendant should be left in her possession of the lands in dispute just as she was, and in addition thereto that she should receive the paper title, a conveyance of the lands. This, it would seem, clearly left the burden of proof still remaining on the plaintiff to present evidence of something to overcome defendant's possession for a time sufficient to give title under the statute of limitations for actions of this kind.

Had plaintiff put in evidence of an agreement as he alleged it, to wit, that the defendant was to deliver possession of the lands, then the defendant might possibly have been compelled to put in evidence of an agreement as she alleged it to overcome plaintiff's evidence, or been cast in the suit. But without such evidence on the part of plaintiff, he failed to offer any evidence at all on an essential, necessary, vital, and material allegation of his complaint, and when by the court permission and opportunity to do so were offered him and he declined to avail himself thereof, the court properly gave judgment of non-suit against him on motion of counsel for defendant.

The judgment of the trial court is affirmed.