: ·[No. 2097]

JOHN QUINN, JAMES A. MAY, AND F. J. PECK, APPELLANTS, *v.* FRED L. SMALL, GEORGE W. LIKENS, CHARLES H. RULISON, AND W. H. PEARSON AND M. E. CAFERETTA (COPARTNERS DOING BUSINESS AS PEARSON & CAFERETTA), AND JOHN DOE AND RICHARD ROE, RESPONDENTS.

[143 Pac. 1053]

1. ADVERSE POSSESSION—RECOVERY OF REAL PROPERTY.

Where defendants and their predecessors had continued under a deed executed in 1887 in the sole, open, and notorious possession of a strip of ground by the side of a lot the boundary of which was in dispute, an action by the holder of the record title thereto to recover its possession was barred.

2. ESTOPPEL—ACQUIESCENCE.

Where purchases by defendants and their predecessors were intended to include a strip of land and a house thereon, their continued, open, and notorious possession of the strip and the house was notice of their claim to plaintiffs or their predecessors subsequently obtaining their deeds to the lot; and in equity the subsequent purchasers, with such notice, were estopped, by long acquiescence in the complete acts of ownership exercised by the prior purchasers, from recovering the strip.

APPEAL from the Second Judicial District Court, Washoe County; *John S. Orr*, Judge.

Action by John Quinn and others against Fred L. Small and others. Judgment for defendants, and plaintiffs appeal. **Affirmed.**

*Moore & Woodburn,* for Appellants.

*Brown & Belford* and *C. R. Lewers,* for Respondents.

By the Court, TALBOT, C. J.:

The plaintiffs, who are the appellants, brought this action to recover possession of a strip of ground 22.8 feet

wide, along the westerly side of lot 53 of the river front, ·according to the original survey of the town, now city, of Reno, and for $1,200 damages for detention and rents. The defendants pleaded estoppel and the statute of limitations. The appeal is from a judgment in their favor.

Ever since the filing of the town plat in 1871, the plaintiffs and their grantors have held the record title to lot 53, which according to late surveys covers the tract in dispute, and to lots 54 to 86, inclusive, adjoining lot 53 to the eastward; and during that time the defendants and their predecessors in interest have held the record title to lots 48 to 52, inclusive, lying to the west of the ground in controversy.

The court found:

That the board houses upon the contested premises had been placed there long prior to the year 1887, and that prior to October, 1887, the exact date being unknown, D. H. Haskell, who had an interest in and supervision over the property as hereinafter stated, constructed a board fence along lot 53, about fourteen inches easterly from this house, which fence remained there until about two years prior to the commencement of this action.

That in May, 1887, one C. S. Martin, the predecessor in interest of the defendants, received a deed to lots 49, 50, and 51 from one Anna R. Chambers.

That on the 8th day of October, 1887, Martin purchased lots 48, 50, and 52 from Charles Crocker; that at the time of such purchase by Martin, Haskell acted as the agent of Crocker in making the sale, and at the time of such sale was the owner of an undivided one-half interest in lots 53 to 80, inclusive, and pointed out the fence as being the boundary line between the premises purchased by Martin and lot 53 and the other lots to the eastward, then owned by Haskell and the Mannings.

[1] That Martin, from the time that he entered into possession of the premises west of the fence on October 8, 1887, under his deed from ·Charles Crocker, until he sold to W. H. Pearson and others in May, 1906, continued in the sole, open and notorious possession of the

premises in dispute, which have since been held by his grantors, including the defendants in this action.

That after Martin had gone into possession of the premises, and at a time more than ten years prior to the commencement of this suit, it was agreed between him and A. H. Manning that the fence was the boundary line between the property so owned by Martin and the lots mentioned lying to the eastward, one-half of which were owned by the Mannings.

That on March 29, 1894, Haskell sold and conveyed to Martin an undivided one-half interest of lots 53 to 86, and thereupon Martin became a cotenant with the Mannings in those lots.

That thereafter Martin continued in the sole possession of the land west of the fence, collected the rents from the house upon the tract in dispute, made repairs thereon, and otherwise treated the property as his own, and always asserted his ownership up to the fence adversely to the Mannings and to the whole world.

That the Mannings at all times acquiesced in the fence as the boundary line between Martin's sole property and the property in which Martin was a tenant in common with them.

That in the year 1901, Martin, because of his agreement with the owners of the property east of the fence that the fence was the boundary line of the lots purchased by him from Crocker, and because of the long-continued acquiescence therein, and believing, because of the statements made to him by Haskell, and because of the agreement and acquiescence of the Mannings, that this fence was the east boundary line of his property in the river front, which consisted in all of five 25-foot contiguous lots, by measuring a distance of 125 feet west from the fence, gave up and surrendered to one Ida Robbins all his right and title to about 22.8 feet in frontage of the land he would otherwise have heen entitled to according to the official plat of the lots as shown by the recent surveys; all of which he would not have done except for

his reliance upon the fence being the true east boundary of his five lots; that the area thus surrendered to Ida Robbins was then, and is now, of greater value than the premises now in dispute in this action.

That Martin and his successors in interest, including the defendants, have improved and cared for the disputed premises at their own expense for more than twenty years prior to the bringing of this action.

That on the 7th day of May, 1906, Martin, desiring to sell to defendants, Pearson and Caferetta and others all of the land lying west of the fence, then owned, claimed and possessed by Martin, pointed out to the defendants, Pearson & Caferetta, the fence as the east boundary line of the land owned wholly and exclusively by Martin and as the east boundary line of lot 52, and thereupon Pearson & Caferetta, believing the statements of Martin and relying upon the same, did purchase for a large consideration paid by them and their associates to Martin all the property of Martin lying west of the fence and east of the line fixed by Martin as the line between the property of Martin and that of Ida Robbins, and received a deed from Martin in which the premises now in dispute were described as being lot 52 or a portion thereof.

That Pearson & Caferetta then believed that the fence was the east boundary of the property so conveyed and described.

That thereupon Martin delivered to Pearson & Caferetta, and they, for themselves and their cograntees, went into possession of all the premises west of the fence, with the knowledge and acquiescence of the owners and claimants of the land east of the fence, and remained in possession until they sold the premises to the appellants, Small, Likens, and Rulison.

That Pearson & Caferetta, as well known by Martin, purchased the premises by reason of their situation and the improvements thereon, including the house now in dispute in this action, and in reliance upon the representation of Martin, and with the belief that by such

purchase they were acquiring five full lots of 25 feet each, with the intent to claim all the premises now in dispute lying west of the fence.

That on or about the 1st day of October, 1906, the defendants Small, Likens, and Rulison, by various mesne conveyances, purchased for a large consideration paid by them, all of the property of Martin lying west of the fence and east of the line agreed upon and fixed by Martin as the line between the property of Martin and Ida Robbins.

That the defendants and their grantors then believed that the fence was the east boundary of the property so conveyed.

That the defendants, Small, Likens, and Rulison, purchased the premises by reason of the situation and improvements thereon, including the frame house now on the land in dispute, and with the belief that they were acquiring five full lots of 25 feet frontage each, and went into possession of all the premises west of the fence with the knowledge and acquiescence of the owners and grantees of the land east of the fence, and have ever remained in possession of the same.

That more than fifteen years before the bringing of this action, the respective grantors of the opposing parties hereto, being then in the possession and ownership of the lands and premises on each side of the fence, did by express agreement fix and establish the fence as the east boundary of lot 52, and as the line between the premises owned and claimed exclusively by Martin from and after his purchase in 1887 and the premises owned and claimed by Haskell and Martin at all times between the years 1887 and 1894, and that since said boundary was so fixed the defendants and their grantors have held, occupied and claimed at all times the premises now in dispute west of the fence exclusively and adversely to all the world, and have expended money in caring for and improving the property, in reliance upon such boundary, and have fixed the boundary between the land claimed

by them and Ida Robbins in reliance upon the boundary so established.

That for more than twenty years prior to the bringing of this action, the fence has been treated and considered by long acquiescence, understanding and agreement of all persons during that time, concerned in the ownership, possession, use, and occupation and assessment of the premises on either side thereof as the established and recognized east boundary of lot 52, and as the established and recognized boundary between lots 52 and 53; that the same persons, during all of that time, by common acquiescence and agreement, considered that the land in dispute immediately west of the fence was actually lot 52 and not lot 53, or any part thereof.

That all tax returns, reports, and statements on the property were in fact made upon it as lot 52, and it was so considered for all taxes and assessment purposes.

That the defendants, Small, Likens, and Rulison, and their grantors, have been in peaceful, open, continuous, and notorious possession of lot 52 as the same is so established, by long understanding and acquiescence, and including the premises now in dispute, for more than ten years next prior to the bringing of this action, and during all of that time held the same under a claim of right and ownership adverse to the plaintiffs and their grantors and the whole world; that during all of that period the defendants and their grantors have paid all taxes and assessments levied against the property now in dispute and the improvements thereon.

On behalf of appellants it is contended that C. S. Martin, laboring under a mistake as to the actual location of the true line between lots 52 and 53, believed the line to be at the fence and so informed his coowners in lots 52 and 86, inclusive, and—

"That he never claimed, or intended to claim, as his individual property, any lands except those described in his deeds to lots 48 to 52, inclusive; that the owners of lots 53 to 86, inclusive, never intended to surrender any

part of lot 53 as described in their deeds, and that the possession of Martin and his predecessors in interest to the west 22.8 feet of lot 53 arose and continued under such mistaken belief; that it was not the intention of Martin or his successors to hold or occupy or ·claim any land beyond the true line as fixed by the original map of the town, now city, of Reno."

It is also the contention of appellants—

"That the facts in this case bring it squarely within the rule laid down by the court in the case of *McDonald* v. *Fox*, 20 Nev. 364."

Different questions of fact are presented and there are elements of estoppel and limitation in this case which do not appear in that one. The court properly found that the defendants and their grantors, including Martin, during the many years mentioned, held and possessed the land in controversy and to the west of the fence under claim of ownership against the appellants, their predecessors in interests, and all others.

[2] The evidence indicates that the purchases made by the respondents and their predecessors were intended to include the tract in controversy and the house thereon. This is shown, not alone by the statements that the fence was the dividing line made and accepted at the different times when sales were made of the property on each side of the fence, but from the fact that the building on the contested ground was considered as included in the sales made by the respondent's predecessors in interest, and that the undisputed possession and control of the building was in the possession of the respondents and their grantors from the beginning, and for a period far exceeding the statute of limitations.

In equity the appellants are as much estopped by long acquiescence of their grantors in the purchase and sale and complete acts of ownership of the respondents and their grantors of the house on the premises as if they had acquiesced in the building of a new house on the contested ground, as Martin had done with Ida Robbins. (*Small* v. *Robbins*, 33 Nev. 297.)

A person who is led into purchasing a house by the representations, acts, and long acquiesence of owners of land, sleeping upon their rights, is as much entitled to protection as the man who, under similar circumstances, is induced to erect a building. The continued, open and notorious possession of the house by the respondents and their grantors was notice of their claim to the disputed premises at the time appellants and their predecessors purchased or secured the deeds to lot 53.

In the McDonald-Fox case the disputed ground was the space between the two houses six feet apart, and the line ran near the middle of this space. The plaintiff relied solely upon the actual possession of the ground in controversy, and there was some dispute regarding her claim of exclusive use and occupancy of the space, and as to whether the fence at the side had been placed there before or after she purchased. There was no question regarding the right to the valuable building upon the ground or regarding the sale of a house or improvements, or the land, under mistaken representations as to the line, or otherwise, and no undisputed evidence of estoppel or of adverse possession such as relate to the building and ground in controversy in this action.

The present case is more nearly supported as to the statute of limitations by the one of *Adams* v. *Child*, 28 Nev. 169, and the authorities there cited, and as to estoppel by the one of *Small* v. *Robbins*, 33 Nev. 279.

The judgment of the district court is affirmed.

ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.