CEGES SCEIRINE, APPELLANT, v. R. W. DENSMORE AND ED TAMAGNI, RESPONDENTS.

No. 6241

January 20, 1971                              479 P.2d 779

---

*Belford & Anglim,* and *William M. O'Mara,* of Reno, for Appellant.

*Diehl, Recanzone & Evans,* and *Stanley Smart,* of Fallon, for Respondents.

## OPINION

By the Court, ZENOFF, C. J.:

Ceges Sceirine brought action against R. W. Densmore and Ed Tamagni seeking a declaration that a certain six acres of land belonged to him, not to them, and seeking to enjoin them against interfering with his use of the land.

The issue is: When a land owner has cleared and cultivated a parcel of land up to a fence erected by the State Highway Department to mark their right of way, does title become vested in him as against those who hold legal title to the parcel where there had been no dispute or uncertainty as to the true boundary and the respective owners failed to assert the true boundary for 40 years?

The land in question is part of the realty described in the respondents' deed which came to them variously through descent and purchase. Densmore and Tamagni at all times germane to the issue of this case, paid the taxes on the property, but Sceirine and his predecessors cultivated the land since 1924 and retained for themselves whatever benefits resulted therefrom. Record title to the property in dispute is conceded to have been in the name of the respondents from the time Sceirine acquired his property.

In 1924 the Nevada Highway Department constructed a new highway, or in reality, re-layed a new road atop the road already there, following a course roughly along the dividing line between the lots belonging to the litigants' predecessors. Neither the parties nor their predecessors had anything to do originally or at the re-laying, with the location of the highway nor were they consulted by the Highway authorities. The fence was built by the Highway Department apparently to mark the highway right of way. Although none of the parties or their predecessors were aware of it, the erection of the fence sliced off the six-acre piece in question. From that time forward the respondents' property was on the side of the road contiguous to that of the appellant. Apparently, believing the property was part of their own, Sceirine's predecessors cleared the land and cultivated it, all to their profit. Sceirine continued this use of the land until 1965 when it was discovered that the piece of land was owned by the respondents.

The trial court ruled that neither the theory of agreed boundaries nor adverse possession operated to transfer ownership of the six acres to Sceirine. He appeals from that ruling.

1. The trial established without dispute that the property owner in whose name the disputed property is described in the deed paid the taxes. The doctrine of adverse possession is therefore not available to Sceirine. NRS 11.150 requires the claimant to pay the taxes on the property as one prerequisite at least to claim ownership. McNoble v. Justiniano, 11 P. 742 (Cal. 1886); Meyer v. Schoeffler, 227 P. 1061 (Idaho 1924); Central Pac. Ry. Co. v. Tarpey, 168 P. 554 (Utah 1917).

2. As to agreed boundaries, truly we deal in a murky area of property law. *See* Browder, The Practical Location of Boundaries, 56 Mich.L.Rev. 487 (1958). Basically, acquiescence may be used to show an agreed boundary where there has been shown: (a) dispute or uncertainty as to the boundary; (b) possession to a certain line; (c) possession for a specified time; (d) acquiescence to that possession, from which an agreement is implied. *See generally* 6 Thompson on Real Property, §§ 3034, 3036 (1962 Replacement). The implied agreement assumedly is in the nature of a compromise settlement between parties who actually dispute or are uncertain as to a boundary line.

We accept those decisions that hold that such an agreement referred to may be implied rather than actual. Peake v. Azusa Valley Savings Bank, 99 P.2d 382 (Cal.App. 1940); McGinty v. Interstate Land & Imp. Co., 90 S.E.2d 42 (Ga.App. 1955); Annot., 69 A.L.R. 1430, § IV(h) (1930); Annot., 113 A.L.R. 421, § IV(h) (1938). This problem usually has its inception after many years have gone by, when witnesses and documents are rarely, if ever, still available to establish an actual agreement to settle a boundary line dispute. Acquiescence can therefore be relied upon to spell out that a settlement agreement must have taken place sometime in the past.

Acquiescence differs essentially from "practical location" in that in the former no positive evidence of an early agreement is usually available. Only the dispute or uncertainty is proven. After the adjoining land owners become aware of a dispute between them as to the proper location of the line and then

acquiesce in a location, the boundary of acquiescence thereby becomes established. From the dispute or uncertainty, plus acquiescence, an agreed boundary is implied.

Practical location differs from acquiescence in that the agreement is actual, rather than implied. As in the case where acquiescence is used to show agreement, there must have been a dispute or uncertainty at the outset, but in the case of practical location there is shown an actual agreement resolving the dispute or uncertainty. 6 Thompson, supra, § 3035. No evidence was adduced here to show a practical location of the boundary. Instead, the acquiescence of the respondents and their predecessors is urged as showing an implied agreement.

In the kind of case presented here, however, there could be no acquiescence in a wrong boundary line. No evidence was shown from which we can imply that a dispute as to the boundary location existed any number of years ago and that an agreement had been reached that the road would be the boundary line. There is a distinct absence of affirmative conduct on the part of the respondents or their predecessors to show that at one time in history they realized that the road was not the true boundary, but that they acquiesced in giving the disputed piece of property to the predecessors of Sceirine. The instant case is thus clearly distinguishable from Adams v. Child, 28 Nev. 169, 88 P. 1087 (1905).

From a variety of discourse on the subject it appears that the doctrine of agreed boundaries occupies a middle ground between adverse possession and estoppel by conduct. An estoppel is conceivable when one of the parties changes his situation, such as in constructing buildings, drainage ditches or irrigation facilities on the property and the true owner acquiesces in those expenditures by not asserting his ownership first. 6 Thompson on Real Property, §§ 3034, 3037 (1962 Replacement); Browder, The Practical Location of Boundaries, 56 Mich.L.Rev. 487, 519 et seq. (1958).

Sceirine did not suffer any deprivation here. He paid no taxes. He made a profit without having gone to the expense of erecting any buildings or constructing drainage ditches or irrigation lines. Thus, the respondents are not estopped to claim their title because Sceirine did not adversely change his position on the faith of his claimed ownership. Cf. Quinn v. Small, 38 Nev. 8, 143 P. 1053 (1914); Small v. Robbins, 33 Nev. 288, 110 P. 1128 (1910); Wagner v. Meinzer, 200 P. 838 (Cal.App. 1921).

We will not hold the owner of a tract of land adjacent to another to be bound under his mistaken belief that it is the true line where no earlier dispute or uncertainty is shown and where no detrimental reliance by the other party is shown.

Affirmed.

BATJER, MOWBRAY, and THOMPSON, JJ., and MANN, D. J., concur.