## HORTON v. ROGHAAR.

No. 2076.    Decided March 9, 1910 (108 Pac. 21).

BOUNDARIES—ESTABLISHMENT—ESTOPPEL. Plaintiff, the owner of land in a city block, sold a portion of it to defendant. Neither party knew the location of the boundaries except as described by deed, there being no monuments on the ground, but it was understood that defendant would have the land surveyed when ready to build. Thereafter defendant, on the advice of plaintiff's father who acted for plaintiff, had a survey made by the city engineer, built a house, and erected a fence around the premises according to such survey. Plaintiff's father saw the improvements being made, but made no objection to the boundaries as fixed by the survey. *Held*, that plaintiff was estopped from thereafter asserting that such boundaries were incorrect, it appearing that a change to the line claimed by plaintiff would result in bringing defendant's line so near his house as to materially damage his property. (Page 303.)

Appeal from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by Alvin E. Horton against Andries Roghaar.

Judgment for defendant.    Plaintiff appeals.

AFFIRMED.

*Joseph Chez* for appellant.

*T. D. Johnson* for respondent.

McCARTY, J.

This is an action in ejectment brought by plaintiff to recover possession of a strip of ground three feet and nine

inches in width and 125 feet in length, situate in Ogden City, Utah. From a judgment rendered in favor of defendant plaintiff appeals. The material facts in the case are about as follows:

On August 30, 1902, one Joseph H. Horton sold and conveyed to his son Alvin E. Horton, plaintiff herein, a part of lots 5 and 6, block 16, plat "B," Ogden City survey. This land, the dimensions of which were 150 feet north and south by 125 feet east and west, is situated about midway between the northwest and the southwest corners of block 16, and abuts upon Monroe Avenue, a street running north and south in Ogden City. At the time this conveyance was made, the grantor, Joseph H. Horton, owned the balance of the ground in block 16 lying south of the 150 feet mentioned. No survey of any kind was made of the land conveyed by Horton to his son. Nor were there any stakes, fences, or other objects thereon indicating the location of either the north or south boundary line. This land remained unimproved, and was a part of an open field until October, 1906, when Alvin E. Horton (plaintiff and appellant) contracted to sell to one Van Woerkom a strip of ground forty feet wide by 125 feet long off from the north side of the 150 feet which he had purchased from his father. At the same time he sold to respondent a piece of ground forty feet wide and 125 feet long south of and contiguous to the strip that he had contracted to sell to Van Woerkom. The recitals in the deed to respondent, so far as material here, are as follows: "Beginning at a point 287 feet south of the northwest corner of said lot six and running thence south forty feet, thence east 125 feet, thence north forty feet, then west 125 feet to beginning." At the time respondent recived his deed there were no stakes, fences, or monuments on the ground, nor on the parcels of ground lying contiguous thereto, to indicate the location of its boundaries. In fact, the record affirmatively shows that neither appellant nor respondent knew the exact, or even approximate, location of the boundaries, except as the same was described by the calls in the deed. On this point appellant testified as fol-

lows: "Q. When you made the deal, you didn't sell any particular forty feet to either of them; just sold each of them forty feet of land in there for so much money? A. Well, I sold them on the north starting from the north end of my land and running eighty feet south. Q. Did you tell them where the land was? A. No, sir. Q. Nothing there to indicate your line; no fence, or anything? A. No, sir. . . . Q. How did you expect them to locate it on the ground? Did you tell them to get it surveyed, or anything of that sort? A. No, I supposed they would get it surveyed when they wanted to locate the ground. Q. That was your supposition when you gave these deeds, when they got ready to build on the land they would get it surveyed? A. Yes, sir. Q. And then go to improving it. That is the way you understood it at that time? A. That is the way I understood it; yes, sir. . . . Q. Didn't Mr. Roghaar (respondent) tell you he was buying the land to build a home on? A. Yes; he told me, I think, that he intended to build." The day after respondent received the deed to his land, appellant left the state and did not return until November, 1907. The evidence, without conflict, shows that during appellant's absence from the state his father was authorized to, and did, attend to his business. Respecting the authority of his father to act for him in matters pertaining to this land during his absence from the state, appellant testified in part as follows: "Q. How did you expect them to get it (referring to the land)? A. Why, I supposed they would have it surveyed. . . . Q. And you went away? A. Yes, sir. Q. And you left your matters, when you did go away, in the hands of your father to attend to for you while you were gone, if any of your matters came up? A. Yes, sir." His father also testified to the same thing. Some time in October, 1906, and after respondent had received a deed to his land, he went to Joseph H. Horton, plaintiff's father, and spoke to him about having the ground surveyed so they would know where the lines and corners of their respective parcels of land were. On this point Joseph H. Horton testified as follows: "Q. Do you

remember of Mr. Roghaar coming to you before he began work at all and speaking to you about where his land was, telling you he wanted to begin and build, and you told him he had better have it surveyed? A. Yes, sir."

In pursuance of the tacit understanding respondent had with appellant at the time he received his deed, as shown by appellant's testimony hereinbefore referred to, and the request made of him by Joseph H. Horton to get the ground surveyed, respondent went to the office of the city engineer of Ogden City, and there made arrangements for a survey of the land as described in his deed. The city engineer, a few days thereafter, surveyed the ground and marked it off by driving a stake at each corner. He also furnished respondent a sketch or plat showing the dimensions and exact location of the boundaries of the land. In making the survey of this land the city engineer used as a starting point a monument established at the northwest corner of block 16, known as one of the city monuments of an official survey made of Ogden City about the year 1889 or 1890, and then followed the calls in the deed. Soon after the survey was made, respondent commenced the erection of a house on the land. The house was built in the center of the lot. This left a vacant space of six feet on either side of the building. There is a door at the south side of the house and a short flight of steps extending from the doorsill to the ground or walk between the house and the south boundary of the lot. After the completion of the house, which cost about $2500 to build, respondent built a picket fence in front of the house and on the west line of his premises as fixed by the survey, and erected a tight board fence around the other three sides of his lot. During the time the house was in course of erection Joseph H. Horton, who was looking after and attending to appellant's business affairs, lived within three hundred feet of respondent's premises and was in that vicinity almost daily, and observed the work as it progressed, from the time respondent began excavating for the foundation until the house and the other improvements mentioned

were completed, and made no objection to the boundaries of respondent's lot as fixed by the city engineer.

About the year 1879, Joseph H. Horton, who was, at that time, the owner of all of lots 5 and 6 in block 16, inclosed them with a fence. The evidence tends to show that this fence was the exterior boundary of said lots as located by a survey made of Ogden City about the year 1878, the stakes and monuments of which have long since disappeared. The fence on the north side of the block is three feet and nine inches north of the north boundary line of the block as fixed by the official survey of Ogden City made about the year 1889 or 1890. Appellant insisted in the court below, and he contends here, that the old fence marks the true boundary line of block 16 on the north, and that therefore the south line of respondent's lot is three feet and nine inches north of where it was located by the city engineer. The evidence shows that if the fence complained of were moved north three feet and nine inches it would practically be against the steps leading from the south door of the house to the walk, and it necessarily follows that this would not only greatly inconvenience respondent in his use and occupation of the house, but the property as a whole would be materially damaged thereby.

Defendant in his answer, among other things, alleged "that plaintiff is, and should be held to be, estopped to claim that he is the owner of any part of the land occupied and improved by this defendant." On the issues tendered by this allegation of defendant's answer, the court found: "That the plaintiff is and should be held to be estopped from asserting that the land surveyed and improved by defendant as hereinbefore stated is not the land mentioned and described in the said deed from plaintiff to defendant." Counsel for appellant contend that the evidence is insufficient to justify this finding. They contend, and it is admitted, that appellant did not know, at the time he executed the deed in question, where the true line was between his own land and the land which he had sold to respondent. Counsel also assert that soon after the deed was executed

appellant left the state and therefore had nothing to do with directing the survey made by the city engineer and knew nothing of the improvements that were made on the land by respondent until after they were completed, and that therefore the principle of estoppel has no application in this case. Appellant testified that when he went out of the state his father, Joseph H. Horton, attended to his business. Joseph H. Horton also testified to the same thing. Therefore appellant is bound by what his father, acting within the scope of his authority, did in the premises. Furthermore, appellant testified that he understood, when he executed the deed to the premises, that respondent would get the land surveyed when he got ready to build upon it. And this is just what respondent did. He went to the office of the city engineer and made arrangements to have the land surveyed. The land as so surveyed was marked off on the ground and the boundary lines clearly indicated by stakes placed thereon by the city engineer. And, as we have observed, appellant's father lived within three hundred feet of the premises in question and was in the immediate vicinity thereof almost daily during the time respondent was building his house and making other valuable improvements. On this point appellant's father testified in part as follows: "I am a contractor and builder; that has been my business for thirty or forty years. . . . I saw the house going up. I saw them dig the cellar. I saw them laying the foundation. I knew it (the house) was going up. I think the house was finished before the fence was built. When the fence had been put up by them I went and had a talk." The evidence, without conflict, shows that no objection was made to the boundaries as established by the city engineer until after these improvements were practically all made. Suppose, for example, that appellant, or his father, had made arrangements with the city engineer to make the survey in question, or had gotten some other party to survey or mark off the land, and respondent had gone on and made his improvements, would it be seriously contended that appellant would not be bound by the bound-

aries thus established? We think not. Appellant is in the same position as though he and the respondent had agreed upon a practical location of the boundary line, and respondent had with the knowledge and acquiescence of appellant gone on and made the improvements mentioned.

Under the facts and circumstances of the case we are clearly of the opinion that appellant is estopped from asserting any claim or right to the strip of land in dispute, and that the court did not err in so finding.

The judgment is affirmed, with costs to respondent.

STRAUP, C. J., and FRICK, J., concur.