[No. 1867]

FRED L. SMALL, GEORGE LIKENS AND ·CHARLES
H.   RULISON, APPELLANTS, *v.* IDA   ROBBINS,
RESPONDENT.

1. BOUNDARIES—DIVISION LINE—ESTABLISHMENT BY AGREEMENT.
    Where a dividing line was established between the property
    of plaintiffs and defendant by the act of one, through whom
    plaintiffs deraigned title and was acquiesced in by defendant,
    in accordance with which they or their grantees occupied their
    respective lands for a time in excess of that prescribed by
    limitations, and, immediately upon the establishment of such
    line, defendant made valuable improvements with reference
    thereto, with the knowledge of the one who established the line,
    he and his successors in interest would be estopped from ques-
    tioning its correctness, notwithstanding the rule that when the
    intent is to establish the line according to the true boundary,
    and by mistake the parties agree on a line which does not con-
    form thereto, the agreed line is not conclusive.

APPEAL from the District Court of the Second Judicial
District of the State of Nevada, Washoe .County; *John
S. Orr*, Judge.

Action by Fred L. Small and others against Ida Rob-
bins.   Judgment for defendant, and plaintiffs appeal.
**Affirmed.**   On petition for rehearing, rehearing granted;

but former opinion affirmed by SWEENEY, C. J., TALBOT, J., concurring, NORCROSS, J., dissenting.

The facts sufficiently appear in the opinion.

*Cheney, Massey & Price*, for Appellants:

The respondent has no prescriptive title. On the trial of the case there was set up the adverse possession of the land in controversy by the defendant and her title thereto by prescription. It is elementary that possession by consent is not adverse, and no prescriptive title can arise under such conditions. If Ida Robbins occupied this land under the agreement it was not adverse, but by consent and agreement, because consent is agreement.

But for a further reason there is and can be no merit, as a matter of law, in any claim of adverse possession, and such claim may as well be eliminated now.

Our statute provides in express and mandatory terms that in no case shall adverse possession be considered as established unless it be shown in every action for the recovery of real property that the land has not only been occupied and claimed for the period continuously, but that the party so claiming, and his predecessors and grantors have paid all taxes, state, county and municipal, which may have been levied and assessed against said land for the period mentioned. The evidence that Ida Robbins never paid any taxes assessed against the land in controversy is not disputed. That the plaintiffs and their grantor, Martin, always paid these taxes is also not disputed. Martin testified that he paid the taxes on lots Nos. 48 and 52 until he sold them. The exhibits show that the subsequent taxes on lot 48 were paid by appellants. (Comp. Laws, 3709.)

The language of the section cited above is mandatory and was incorporated into the law of this state in 1887. It follows the provision of the California statute as amended in 1878, and that statute has frequently been before the supreme court for construction, and in each

instance the court has held that where taxes had been levied against the property the party relying upon a prescriptive title must show that he had paid such taxes. (*O'Connor* v. *Fogle*, 63 Cal. 9; *C. P. R. Co.* v. *Shackelford*, 63 Cal. 261; *Webb* v. *Clark*, 65 Cal. 56; *Martin* v. *Ward*, 69 Cal. 129; *McNoble* v. *Justiniano*, 70 Cal. 395; *Brown* v. *Clark*, 89 Cal. 196; *Frederick* v. *Dickey*, 91 Cal. 358; *Standard Quicksilver Co.* v. *Habishaw*, 132 Cal. 115; *Allen* v. *McKay & Co.*, 139 Cal. 94; *Willard* v. *Clark*, 80 Cal. 605.)

Other states under the statutory rule have held to the same effect.

It will be well to note in this connection that any claim of adverse possession in connection with the subsequent claim of the defendant, upon the agreement and contract with Martin fixing the boundary, is also without foundation under this statute, and we dismiss this feature from further consideration at this time.

The agreement did not fix the boundary against appellants.

The decision of the court upon the contention made was to the effect that Robbins and Martin having entered into an agreement fixing the boundary between lots No. 47 and 48, and said agreement having been acted upon and acquiesced, as a matter of law the agreed boundary is the boundary between said lots and the possession of the defendant is lawful. The above statement is not based, first, upon the true facts of the case and, second, based upon the true facts it is not the law.

There are innumerable authorities holding that, where a disputed boundary line is fixed by agreement of the parties and acted upon, such line so fixed and agreed upon becomes the true boundary line. But this is not this case. There was no disputed boundary line in this case. Ida Robbins did not know where any of the boundaries of lot 48 was at the time of the alleged agreement, so there was nothing for her to dispute. C. S. Martin, as he thought, did know where the true boundary line was and set stakes upon what he thought and believed to be the true boundary line and what Ida Robbins had no

reason to say was not the true boundary line. A mistake was made as to where the true boundary line was by these parties. That is the evidence in a nutshell. They did not settle any disputed boundary line because no such line was in dispute. They only undertook to establish the line where each supposed it actually was, but which proved to be a mistake. Under these facts the rule of law is not as found by the court, and as will be stated by counsel.

The true rule is that an agreement between adjoining owners establishing a disputed boundary line is generally conclusive upon them and persons claiming under them, but when the intention was to establish the line according to the true boundary, and by mistake the parties agreed upon a line which does not conform to such true boundary, the line so agreed upon is not conclusive. (*Schraeder M. Co.* v. *Packer,* 129 U. S. 688; *Hatfield* v. *Workman,* 35 W. Va. 578; *Whitney* v. *Detroit Lumber Co.,* 78 *Wis.* 240; *Guedici* v. *Boots,* 42 Cal. 452; *Bailey* v. *Jones,* 14 Ga. 384; *Silver Creek Cement Co.* v. *Union Cement Co,,* 35 N. E. 125; *Gove* v. *Richardson,* 4 Me. 327; *Thayer* v. *Bacon,* 3 Allen, 163; *Brewer* v. *Boston and Worcester R. R.,* 5 Metc. 478; *McKinney* v. *Doane,* 155 Mo. 287; *Hedges* v. *Pollard,* 149 Mo. 216; *Kincaid* v. *Dormey,* 51 Mo. 552; *Menkens* v. *Blumenthal,* 27 Mo. 198; *Coon* v. *Smith,* 29 N. Y. 392; *Terry* v. *Chandler,* 16 N. Y. 354; *Davis* v. *Russell,* 142 Pa. St. 426; *Turner Falls Lumber Co.* v. *Burns,* 71 Vt. 45; *Ulman* v. *Clark,* 100 Fed. 180; *Jordan* v. *Ferree,* 101 Iowa, 440; *Higginson* v. *Schaneback,* 66 S. W. 1040; *Patton* v. *Smith,* 71 S. W. 187; *Sonnemann* v. *Mertz,* 221 Ill. 362; *Purtle* v. *Bell,* 225 Ill. 523; *Crane* v. *Judge,* 30 Utah, 50; *Anderson* v. *Huebel,* 133 Wis. 542.)

In the case of *Mining Co.* v. *Packer* above cited the Supreme Court of the United States quotes with approval the following clear, comprehensive and just statement of the rule from the Supreme Court of Pennsylvania: "If the parties, from misapprehension, adjust their fences and exercise acts of ownership in conformity with a line which turns out not to be the true boundary, or permission be ignorantly given to place a fence on the land of

the party, this will not amount to an agreement or be binding as an assent of the parties; and I agree it is a principle of equity that the parties to an agreement must be acquainted with the extent of their rights and the nature of the information they can call for respecting them, else they will not be bound. The reason is that they proceed under an idea that the fact which is the inducement to the agreement is in a particular way, and give their assent, not absolutely, but on conditions that are falsified by the event."

In the case of *Purtle* v. *Bell,* the Supreme Court of Illinois states the rule in clear and just terms: "If the line is not in dispute, and the intention of the parties is merely to determine the exact or true line, and in so doing an erroneous line is agreed upon by accident or mistake, the agreement will not be binding, and the line will not be established, merely because of the agreement previously entered into between the parties. In such a case there is a failure to find the true line through accident or mistake, and not an agreement to adopt an unascertained or disputed line; hence the same rule does not apply with reference to possession, estoppel, etc."

In the case of *Crane* v. *Judge* the Supreme Court of Utah states: "A contract by which defendant's predecessor in title conveyed to plaintiff a perpetual right to use and enjoy the north half of the north wall of a building located over the line for building purposes, which agreement also contained a mistaken description of the location of the wall, did not constitute an agreement that the wall of such building should be considered as the boundary line. Nothing can be claimed by way of adverse possession because of the erection of the one-story building, for it was built less than seven years prior to the commencement of the action. The stipulation and the evidence show, not only that the defendant did not pay the taxes on the strip of ground in question, but also show affirmatively that the plaintiff did so. While it may seem a harsh rule to apply the requirement of the statute to pay taxes to this kind of a case, the statute in most positive

terms makes such requirement an essential in all cases.
Under such a statute, and under facts similar to those in
the case at bar, the courts of California have given the
statute application, and held the claim of adverse posses-
sion unestablished because of the nonpayment of taxes
by the party claiming to hold the strip adversely."

It is not an answer to the rule laid down to say that
the boundary mistakenly fixed in 1901 was acquiesced in.
The evidence shows it was acquiesced in only so long as
the mistake was unknown.   Neither can it be said that
there was any adverse possession or claim or intention
to claim on the part of Robbins to the line.   The evidence
shows that she occupied up to this line under a mistaken
idea that it was the true line.   She never paid taxes on
any of the land in controversy.   She never did any act
asserting a claim to any ground other than that covered
by the Walker deed.   In fact, as shown by the testi-
mony, there were no boundaries marked on Front Street
outside of the fence which was mistakenly supposed to
be on the line between lots No. 52 and 53.   It is not
sufficient to say that there was an implied agreement
respecting this matter.   If there was an agreement at
all, according to the testimony of Ida Robbins, it was an
express agreement.   According to the testimony of Mr.
Martin and the other witnesses it was an express agree-
ment.   According to the testimony of all the witnesses
it was an express agreement to establish the boundary
line between lots 47 and 48 according to the original sur-
vey and true line and no intention on the part of either
to surrender or give up to the other any part of lot
47 or 48, and each of the parties assumed and believed
that they had not given to the other any portion of the
grounds included within the respective lots.   They rested
upon that assumption until the survey was made shortly
before the institution of this suit.   The line fixed was
fixed by mutual mistake and there is nothing either in
the evidence, or in the law, or under the rules of equity
which requires the court to bind the parties by a mistake
of this kind.   We therefore respectfully submit that the

judgment and order appealed from should be reversed and a judgment in favor of the appellants in this action be directed.

*Stoddard, Moore & Woodburn,* for Respondent:

Counsel for appellants in his brief argues that both C. S. Martin and Ida Robbins made a mistake as to the true boundary line, and for that reason that such agreement is not binding upon either party or their successors in interest, and cites a large number of cases, which it is contended supports this position.

From an examination of the cases cited, it appears either that the statute of limitations had not run after the making of the agreement, and that the party injured instituted proceedings before such time had expired, or that the line so fixed was fixed by and through the misrepresentations, fraud or imposition of the party benefited.

The decisions of the State of Missouri appear to have gone further to support counsel's contention than that of any other jurisdiction, and in one of the leading cases of that state it is held the possession of coterminous proprietors under a mistake or ignorance of the true line, and without intending to claim beyond it will not work a disseisin. (*Finch* v. *Ullman,* 105 Mo. 255, cited in 24 Am. Rep. 383.)

But upon this proposition the authorities are not uniform and it is held in many jurisdictions that "possession beyond a boundary line, although it was taken through mistake or ignorance, will support a plea of the statutes of limitations and create a title by prescription." (*French* v. *Pierce,* 8 Conn. 439, cited in 21 Am. Dec. 680; *Metcalf* v. *McCutchen,* 60 Miss. 145; *Ramsey* v. *Glenny,* 45 Minn. 401; *Flynn* v. *Glenny,* 51 Mich. 580; *Watrous* v. *Morrison,* 39 Am. St. Rep. 145; *Canfield* v. *Clark,* 11 Am. St. Rep. 847.)

It is not necessary that there shall be a dispute as to the boundary line between coterminous proprietors to make binding and effective an agreement fixing a boundary between the properties. It may be established by

the acts of the parties, their acquiescence in and observance and the use of the disputed strip, for a period of time at least equal to that fixed by the statute of limitations, and the improvement thereof by the party benefited and claiming with the knowledge of the injured party. (*Helm* v. *Wilson*, 76 Cal. 476.)

The court holds "an instruction that no parol agreement in regard to land is good except when there is a dispute between owners of adjoining tracts of land about a doubtful line, and an agreement upon a division line between them, is erroneous, it not being necessary to the validity of such an agreement that there should be a previous dispute about the line." The court cited in connection therewith *Dolde* v. *Vodicka*, 49 Mo. 98; 1 Wait, Action and Defense, 719, and cases cited; *Silvarer* v. *Lawrence*, 77 Cal. 579.

The cases above cited in our opinion successfully disposes of appellants' argument, granting, for the sake of argument, that counsel's contention as to the effect of the evidence in this case is correct. But it will be found upon the reading of the testimony in this case, and we join with counsel for the appellants in the hope that the court will read all of the testimony, that counsel's view of the case is not sustained.

The trial court, after a careful examination of all the testimony, took a different, and we think a correct, view of the case, which was to the effect that C. S. Martin, the then owner of lot 48 and lots adjoining the same to the eastward, who was the predecessor in interest of appellants, and Ida Robbins, this respondent, who then owned lot 47 immediately adjoining the said lot 48 to the westward, met upon the ground and together mutually agreed upon, established and fixed a line as the dividing line between their respective properties; that this occurred on or about the 5th day of September, 1901; that immediately after the said boundary was fixed, this respondent, in compliance with such said agreement, immediately caused a structure or building which she was then having constructed to be moved five feet to the westward,

off of the land which Martin claimed; that she proceeded to complete said building after it was so moved, built a fence along the line so established, constructed a stone wall at the rear and near the river, filled in the land, and expended in improvements a sum of money in at least the amount of $1,800; that she continued to enjoy, occupy and use all of the said premises up to the line so established from the date it was so established until the commencement of this action, a period longer than that required by the statute of limitations of this state; that the said Martin and all persons acting for or under him from the date the said line was so established has recognized that line and their successors in interest recognized that line until the commencement of this action.

It also appears from the testimony that Ida Robbins paid taxes on the improvements on this disputed strip; also that the building known as the "Q. T." building, extends over on to lot 48 as shown by the survey a distance of some six feet, and that this building had stood upon a portion of this land which is in dispute for a long time prior to September, 1901.

The rule is well settled and the authorities are abundant and uniform to the point that where coterminous proprietors of land have established a division line between their respective properties, have entered upon and improved the lands in accordance with such line, and have acquiesced in its location for a time at least equal to that prescribed by the statute of limitations, although it may not be the true line according to the calls of their deeds, they are thereafter precluded from claiming that it is not the true line. (*Dibble* v. *Rogers*, 13 Wend. 536; *Jackson* v. *McDonald*, 12 Wend. 421, 16 Wend. 175; *Clark* v. *Wesley*, 16 Wend. 320; *Bradstreet* v. *Pratt*, 18 Wend. 44; *Adams* v. *Rockwell*, 16 Wend. 285; *Smith* v. *McAllister*, 14 Barb. 434; *Kip* v. *Norton*, 27 Am. Dec. 120, and notes; *Silvarer* v. *Lawrence*, 76 Cal. 476, 77 Cal. 579; *Salsbury* v. *Shirley*, 66 Cal. 223; *Sneed* v. *Osborn*, 25 Cal. 619; *Laverty* v. *Moore*, 32 Barb. 347; *Cooper* v. *Verra*, 59

Cal. 282; *Menkens* v. *Blumenthal,* 27 Mo. 198; *Adams* v. *Child,* 28 Nev. 184.)

The above authorities hold that disputed boundaries between two adjoining proprietors may be settled by expressed parol agreement executed immediately and accompanied by possession according thereto.   Upon the same point, we cite *Terry* v. *Chandler,* 16 N. Y. 354; *Vosburgh* v. *Teator,* 32 N. Y. 568; *Smith* v. *Dudley,* 13 Am. Dec. 224.

After the parties have deliberately settled a boundary line between them, it would give too much encouragement to the spirit of litigation to look beyond such settlement and break up the line so settled (*Jackson* v. *Corlear,* 11 Johns. 123), the boundary previously fixed by mutual agreement binding all owners and those holding under them.   (*Larsen* v. *Townsite,* 59 Pac. 234; *Dierssen* v. *Nelson,* 71 Pac. 456.)

In *Flynn* v. *Glenny,* 51 Mich. 580, the court holds resurvey cannot be allowed to unsettle the lines of town lots after the lot owners have established such lines in accordance with the stakes which they have found planted or required by authority, and in reliance on which they have purchased.

By the Court, SWEENEY, J.:

This action was instituted on the 10th day of December, 1907, by the above-named appellants against the respondent to recover possession of a portion of lot 48 in the river front, in the city of Reno, as shown by the original official plat and survey of the town (now city) of Reno.   On the 4th day of September, 1901, and for some time prior thereto, the respondent was the owner by title deeds of lots 45, 46, and 47 of said river front, and was the owner of the same continuously from said time down to the institution of this action.   On the said 4th day of September, 1901, one C. S. Martin was the owner of said lot 48, and other lots in said river front lying to the east thereof.   On the 7th day of May, 1906, the said

C. S. Martin conveyed said lot 48, together with lots 50 and 52, in said river front, to W. H. Pierson, M. E. Cafferata, J. Pickard, and P. Saturno, which said grantees subsequently, and on the 28th day of September, 1906, conveyed said lots to the appellants herein.

It appears from the testimony that on the said 4th day of September, 1901, the said C. S. Martin became aware that the respondent, Ida Robbins, was constructing a building on what was believed by her to be lot 47, the said C. S. Martin, believing that said structure extended over a portion of said lot 48, then owned by him, personally made certain measurements of what he supposed at the time definitely located the dividing line between said lots 47 and 48. From the measurements so made by him at that time, it appeared that the respondent was encroaching upon lot 48 a distance of five feet. The said Martin notified the respondent that her building was extending over his lot 48 a distance of five feet, and requested her to remove the same therefrom. He then set a stake at a point which he claimed to be the dividing line between said lots. The respondent accepted as correct the division line so designated by the said Martin, caused the building which she was then constructing to be moved to the west a distance of five feet, built a fence along the division line as indicated by the said Martin, and proceeded to improve the ground to the west of said line by building a stone wall along the river, and filled in said lot; the improvements so made by her being estimated to be of a value of $1,800. After the said division line was so designated by Martin and acquiesced in by the respondent in September, 1901, no further question was raised as to the correctness of said line until shortly prior to the institution of this action, a period of about six years.

It further appears from the testimony that in locating the boundary line between said lots 47 and 48 the said Martin measured 125 feet westerly from a certain fence, which he supposed, and for many years prior thereto had supposed, marked the boundary line between lots 52 and

53 of said river front, having been so informed many years prior thereto by his immediate grantor, but which fence was not in fact on said division line between lots 52 and 53, but was 22.8 feet east of the same.

From a letter written by the said C. S. Martin of date August 30, 1908, and introduced in evidence without objection, appears what may be regarded as a correct statement of facts, which accounts for the error in locating the dividing line between said lots 47 and 48: "I measured with a tapeline 125 feet from what I supposed was the easterly line of lot 52, of the river front, Chinatown lot coming next being No. 53. Now when I purchased said lot 52, also lots 48 and 49 of Contract and Finance Company (C. P. R. R. Co.) their townsite agent, D. H. Haskell, had built a plank fence as a division line between lots 52 and 53, said Haskell at that time being a one-half owner of all of Chinatown: Now when I purchased said lots 48, 49 and 52 from railroad company through its agent, Haskell (now deceased), I did not question for a moment but that the fence he had built as a dividing line between lots 52 and 53 was a correct boundary line. Time rolled on for perhaps over twenty years more, in the meantime I purchased all of Haskell's interests in Chinatown. In the course of fourteen or fifteen years, more or less, myself and A. H. Manning sold all of Chinatown to F. J. Peck, Charles May, *et al.*, who after becoming owners of Chinatown had a survey made thereof and found that Mr. Haskell had made a mistake as to the dividing line between lots 52 and 53. The survey made by Peck, May and Company established a line twenty, more or less, feet westerly from where Mr. Haskell had his dividing line fence. This shows that Mr. Haskell, being the owner of Chinatown, made a mistake of twenty feet of ground, more or less, not in his favor, but against himself. He used twenty or more feet belonging to Chinatown, Miss Robbins used twenty or more feet belonging to me, her westerly neighbor used twenty or more feet belonging to her, and such has been the case for twenty-three or twenty-four years."

Upon the foregoing state of facts, a judgment was entered in favor of the defendant. From the judgment and from an order denying plaintiffs' motion for a. new trial, they have appealed.

Counsel for appellants in their brief contend that this case should be determined in appellants' favor upon the application of the following rule: "An agreement between adjoining owners establishing a disputed boundary line is generally conclusive upon them and persons claiming under them, but when the intention was to establish the line according to the true boundary and by mistake the parties agreed upon a line which does not conform to such true boundary the line so agreed upon is not conclusive."

Conceding, without deciding, that the foregoing is a proper rule in determining the rights of adjoining landowners under a certain state of facts, nevertheless we do not think it is the rule controlling under the facts established in this case. Where, as in this case, a dividing line was established between the property of appellants and respondent by the act of one through whom appellants deraigned title and was acquiesced in by respondent, which was not in fact the true line according to their respective deeds, but in accordance with which they or their grantees occupied their respective lands for a time in excess of that prescribed by the statute of limitations, and immediately after the establishment of such line the respondent makes valuable improvements with reference to such line, on the land supposed to be hers, with the knowledge of the one who established said line, he and his successors in interest are conclusively estopped from questioning it as the true line. (*Loustalot* v. *McKeel*, 108 Pac. 707; *Horton* v. *Roghaar*, 108 Pac. 21; *Kitchen* v. *Chantland*, 130 Iowa, 618, 105 N. W. 367, 8 Am. & Eng. Ann. Cas. 81; *Miller* v. *Mills County*, 111 Iowa, 654, 82 N. W. 1040; *Pittsburgh Iron Co.* v. *Lake Superior Iron Co.*, 118 Mich. 109, 76 N. W. 395; *Ernsting* v. *Gleason*, 137 Mo. 594, 39 S. W. 70; *Laverty* v. *Moore*, 32 Barb. 347; *Corkhill* v. *Landers*, 44 Barb. 218; *Adams* v. *Child*, 28 Nev. 169.)

The judgment and order denying plaintiffs' motion for a new trial are affirmed.

## ON PETITION FOR REHEARING

By the Court, SWEENEY, J.:

A petition for rehearing and a reply thereto have been filed in the above-entitled cause. The reply to the petition admits as true the following statement contained in the petition: "It is undisputably established that at all times after the boundary line was fixed the respondent had and held all ground covered by her conveyances and the ground in dispute belonging to these complainants."

The foregoing is a statement of a fact not impressed upon the court upon oral argument or in the briefs heretofore made or filed. Upon the contrary, this court accepted as a correct statement of facts the letter of C. S. Martin, of date August 30, 1908, quoted in the opinion heretofore rendered, which letter was admitted in evidence upon the request of one of the parties and the consent of the other party to the action. This letter concludes with the following statement: "This shows that Mr. Haskell, being the owner of Chinatown, made a mistake of twenty feet of ground, more or less, not in his favor, but against himself. He used twenty or more feet belonging to Chinatown, Miss Robbins used twenty or more feet belonging to me, her westerly neighbor twenty or more feet belonging to her, and such has been the case for twenty-three or twenty-four years."

Having accepted this statement contained in the said letter of C. S. Martin as a fact, it appeared that the respondent, Ida Robbins, in case plaintiffs and appellants prevailed in the action, would be the loser of twenty feet or more of the aggregate amount of land embraced within her deeds to lots 45, 46, and 47. It now appears from the petition and reply thereto that the statement above quoted in the letter of C. S. Martin is not the fact as established by the record, but that, upon the contrary, the respondent has all of the land embraced

in lots 45, 46, and 47, and in addition thereto the extra twenty or more feet included in lot 48.

We are still of the opinion that the conclusion reached in our former decision was entirely correct, based upon the facts stated in the decision and then assumed to be true, for under such state of facts the equities were with the respondent. It now being admitted that the said statement contained in the letter of C. S. Martin was an error, and that the record establishes a contrary state of facts, in order that the question may be presented upon the facts as stated in the above quotation from the petition for a rehearing, which are conceded by the respondent to be true, a rehearing is hereby granted.

It is so ordered.

ON REHEARING

By the Court, SWEENEY, C. J.:

Upon further consideration on rehearing, the judgment of district court appealed from, and the decision of the supreme court heretofore rendered will stand affirmed.

TALBOT, J.: I concur.

NORCROSS, J., dissenting:

Upon the original hearing in this case, the judgment was affirmed. A rehearing was granted upon petition of appellants, for the reason that this court had assumed as true a statement of facts contained in a letter of appellants' grantor, admitted in evidence without objection. According to this letter, plaintiffs and defendant, and their grantors and predecessors in interest and others owning land on Front Street in the City of Reno both to the east and west of the property described in the deeds of plaintiffs and defendant had for many years been occupying the land upon that street, not in accordance with the true survey, but each respective owner had been occupying about twenty feet of his neighbors' land to the east, and that this mistake, which applied to the lot owners generally along the street, was due to the mistaken impression that a certain fence several lots easterly of the lots owned

by the plaintiffs was on the dividing line between lots 52 and 53, whereas in fact it was some twenty feet easterly of the true line.

Accepting the statement of facts contained in the letter as true, it appeared that the defendant was occupying no greater amount of land than her deeds called for; that the plaintiffs' grantor had marked the boundary line as it was supposed to lie between lots 47 and 48, and the defendant had acquiesced in the line so marked and had made valuable improvements with regard to such line. Under the facts so assumed it was held that plaintiffs were estopped from questioning the correctness of the line as so established.

The reply to the petition for a rehearing admitted as true the following statement in the petition for a rehearing:

"It is indisputably established that at all times after the boundary line was fixed the respondent had and held all ground covered by her conveyances and the ground in dispute belonging to these complainants."

In the brief filed on rehearing counsel for respondent concede that they made the admission, but in so doing they erred, for, upon making an examination of the record, they find nothing therein upon which to base such an assertion. It is not contended that the admission is not true in fact, but that the record fails to show it. The trial court found as a fact that at the time the said C. S. Martin designated the boundary line between lots 47 and and 48, "and prior thereto, the defendant, Ida Robbins, was the owner of and in possession of lots 45, 46, and 47 of river front, as shown by the official plat of the town (now city) of Reno, Nevada."

We think the record discloses sufficient evidence to support this finding.

The question of an estoppel of Martin and his grantees and successors in interest to question the boundary established between lots 47 and 48, which this court in its former opinion deemed controlling, does not seem to have been given the consideration by the trial court and coun-

sel which its importance, I think, justifies. Defendant
set up two defenses in her answer, one that she had
acquired title by adverse possession and the other, as we
understand it, was intended to set up an estoppel. ·

The trial court based its decision entirely on adverse
possession. The later and better-considered authorities,
I think, would support the decision of the trial court were
it not for a provision of our statute, as amended in 1887,
requiring the adverse claimant to have paid the taxes on
the property claimed in addition to the other requisites
of an adverse possession. See the extensive note to
*Edwards* v. *Flemming*, 33 L. R. A. (N. S.) 923, *et seq.*

Compiled Laws, 3709, provided "that in no case shall
adverse possession be considered established, unless it be
shown, in addition to the above requirements, that the
land has been occupied and claimed for the period of five
years, continuously, and that the party or persons, their
predecessors, and grantors, have paid all taxes, state,
county and municipal, which may have been levied and
assessed against said land for the period above men-
tioned." (Rev. Laws, 4960.)

In this case it appears from the record that the defend-
ant, Ida Robbins, paid the taxes levied and assessed against
lots 45, 46, and 47 only, and that Martin and his successors
paid the taxes levied and assessed against lot 48. This
being the case, defendant could not, under the express
provisions of the statute, acquire title by adverse posses-
sion to the portion of lot 48 in controversy. (*Woodward*
v. *Farris*, 109 Cal. 12; *Lucas* v. *Provines*, 130 Cal. 270.)

This case is not one of the class where the boundary
line is or was indefinite, uncertain, disputed or contro-
verted and the parties in settlement thereof have agreed
upon a dividing line, and have improved their property
with reference thereto, but it is a clear case of an agree-
ment upon a line as a boundary between two lots the
lines of which were definitely fixed and easily ascertain-
able, the parties at the time believing that they were fix-
ing the line in its true location, but through the mistake
of one or both parties the line was located in a wrong

place.    In this latter class of cases the parties are bound to observe the line as so erroneously established, only when the party gaining by the error may be said to have acquired title to the additional strip by adverse possession, or where the subsequent conduct of the parties is such as to estop the party against whose interests the mistake was made, from subsequently questioning the correctness of the boundary.

Defendant must recover, if at all, upon the doctrine of estoppel.    As the question was not determined by the trial court, and as this court in its original opinion based its decision upon what now appears to be an erroneous conception of the facts of the case, I think the case should be retried in order that both sides may have an opportunity to present fully such facts as may have a bearing upon such question and that the same may be considered by the trial court and counsel in the light of all such facts.

It would seem from the record that this case was tried mainly, if not entirely, upon the theory of adverse possession, otherwise some facts in the case which do not seem to be entirely clear from the transcript would have received more attention.    For example, the defendant testified that about eleven years prior to the trial she had had made a survey of the lots, but later qualified this by saying that the survey was not made to determine the amount of property she had, but "was made to build a building."    The building referred to was, doubtless, the one designated as the "Montana."    The west line of this building, according to a map introduced in evidence, was exactly on the line between lots 46 and 47.    This would seem to indicate that the defendant had knowledge, at the time this building was constructed, of the correct location of the boundaries of her lots.    The building was constructed, however, so that it took in the entire width of lot 47 and extended eight or nine feet over on lot 48. The building called the "Mint" joined the "Montana" on the east, and it does not appear that any attention was paid to its location on the ground until Martin concluded

it was over some five feet on his lot 48 and he designated what he supposed was the correct line. The building, it would seem, would have been constructed as planned originally, had Martin not made what he thought was a discovery that it was five feet on his land. It must be conceded that this building was not constructed because Martin designated the boundary, for it was already partially completed at the time. If the defendant knew at the time she built the "Montana" that the west line thereof was on the line between lots 46 and 47, then she knowingly or carelessly built upon her neighbor's ground and the same would be true as to the building called the "Mint." Without some satisfactory explanation of these facts, which the record does not now disclose, I think it very doubtful if the appellants could be said to be estopped from asserting the right of possession of the lot to which they hold the legal title. In any event both parties should have the fullest opportunity to present all the facts which may have a bearing upon the question of estoppel, which the lower court has never passed on, and which it would appear may not have been so seriously urged at the trial as the defense of adverse possession, which was the only question considered by the court in its opinion.

For the reasons stated, I am of the opinion a new trial should be granted.