SIDNEY LEGGETT AND FREDA LEGGETT, RESPONDENTS, v. GUSTAV OLSON AND ETHEL OLSON, APPELLANTS.

No. 3556

October 24, 1949.                              210 P.2d 648.

*Kearney & Adams,* of Reno, for Appellants.

*Leslie A. Leggett,* of Reno, for Respondents.

## OPINION

By the Court, GUILD, District Judge:

Sidney Leggett and Freda Leggett brought an action in the Second judicial district court of the State of Nevada, in and for the county of Washoe against Gustav Olson and Ethel Olson, claiming to be the owners of that certain piece or parcel of land, lying and being in the city of Reno, Washoe County, Nevada, and described as follows:

Beginning at the NE cor. of property, being the SE cor. of Threlkel Lot, a pipe in place on east line of sec. 12, whence the NE cor. of said sec. 12, T. 19 N., R. 19 E., M. D. B. & M. a pipe in concrete, bears N O deg. 10′ W, 193.3 feet; running thence along east line of said sec. 12, S O deg. 10′ E. 146.70 feet to a pipe in place heretofore set at the intersection with originally surveyed north line of State Highway; thence along said north line, more or less, N. 81 deg. 42′ W. 73.90 feet to present concrete highway mounment; thence N. 77 deg. 22′ W. 53.0 feet to a similar monument; thence N. 80 deg. 38′ W. 116.55 feet to approximate original SW cor. of this parcel; thence N. 1 deg. 39′ W. 103.7 feet to NW cor. of same, a point between face of Threlkel fence and concrete base of Olson iron fence and thence N. 89 deg. 34′ E. 242.40 feet to the place of beginning, being situated in Lot 1 of said sec. 12.

The defendants in the action set up two separate defenses, that of adverse possession and estoppel for the following described tract of land:

All of the lands lying west of a certain fence line extending northerly and southerly and terminating between

the north boundary and the south boundary of the area described in plaintiffs' complaint and more particularly being a fence the NE corner of which lies 234.9 feet south 89° 34′ W. of a point on the east line of sec. 12, T. 19 N., R. 19 E., M.D.B. & M., 193.3 feet south of the NE corner of said sec. 12, and the SE corner of which fence lies 240.9 feet south 89° 34′ W. of a point on the east line of section 12., T. 19 N., R. 19 E., M.D.B. & M., 297 feet south of the NE corner of said section 12; the said fence line is further described as being situated between the north boundary of U. S. Highway No. 40 and a line extending south 89° 34′ W. from a point on the east boundary of section 12, T. 19 N., R. 19 E., M.D.B & M., situated 193.3 feet south of the NE corner of said section 12.

The controversy is over a triangular piece of land lying to the west of a concrete footing and wire fence, which concrete footing and wire fence has a course of N. 2° 47′, E. 103.84 feet to the NW corner of the lot, from the SE corner on the U. S. Highway 40 and the Westerly boundary running 1° 39′ W. 103.70 feet, making a strip of land running from no width to 8.04 feet at the north end.

The trial court gave judgment for plaintiffs, the respondents here, from which judgment the defendants, appellants, appeal.

The salient facts and testimony are briefly as follows: In September 1926, Julius Redelius and his wife Ethel Ione Bell Redelius, now Olson, were divorced in the Second judicial district court of the State of Nevada, in and for Washoe county and at the time of said divorce they were the owners of a tract of land of approximately three and a half acres abutting the State highway which runs easterly and westerly between Reno and Sparks; that this tract of land is crossed at right angles by the Sullivan-Kelly Ditch. To the east of the ditch Redelius and his wife had constructed a residence. Mrs. Redelius was awarded the tract of land in question and thereafter

Redelius and his wife, Ethel, agreed that there were unpaid community obligations; that Ethel, his wife, quitclaim to Redelius the property awarded to her by the divorce decree and that he would encumber the portion of the parcel on which the residence had been constructed after setting off the same from the remainder of the tract. He would pay the obligations and reconvey to Ethel, subject to the mortgage, the area set off by him for the use of the residence.

The plaintiffs, respondents here, subsequently acquired the remainder of the tract to the east of the residence parcel and the controversy arises by reason of a dispute as to the proper boundary between these two parcels.

On the 11th of April, 1927, Redelius mortgaged to M. E. Cafferata of the city of Reno, the premises known as the residential property and on the 14th of April, 1927, Julius Redelius deeded to Ethel Ione Bell Olson the tract of land upon which the residence is located, being approximately 103.7 feet on the north line of the right-of-way of the State highway leading between Reno and Sparks and westerly along the north line of said right-of-way, a distance of 86.8 feet, thence north, a distance of 97 feet; thence east a distance of 86.5 feet to the point of beginning.

Prior to the deed from Redelius to his former wife, Mrs. Olson, and prior to the giving of the mortgage from Redelius to Cafferata, and prior to the conveyance of Redelius of the remaining portion (exclusive of the residential portion) to Cafferata and Granata, Redelius hired a surveyor to survey the tract and the surveyor set the survey stakes by placing a pin on the north of the property and the corner of the rubble stone pillar on the south of the property. That is to say, the line established by Redelius was the line north and south from the southeast corner of the rubble stone fence to the pin established by the surveyor to the north.

It appears from the testimony and the exhibits that the description in the conveyances was by metes and

bounds and the difference arises as stated above in the triangular piece of land above described, being as staked off and marked off by the surveyor and Redelius, a difference of 8.04 feet on the north end, tapering down to nothing on the southeast corner.

The testimony is further upon the part of Mr. Redelius that in laying out the residence parcel he used the middle of the ditch above described as the west boundary. The south boundary was along the highway where a rubble stone fence had been built.

The east boundary which is the disputed parcel in this action, was then formed by a line between the rubble stone pillar on the east end of the rubble fence and a pin placed on the north boundary of the property at the point which would as nearly as possible square up the parcel.

The two points as marked (where the fence was later built), were pointed out by Redelius to Cafferata prior to the mortgage which Cafferata took upon the residential property and prior to the time that Cafferata and Granata took a deed from Redelius to the remaining property; and that Redelius had marked off this line by taking certain measurements with a steel tape and afterwards driving stakes at each end of the northerly-southerly line.

It is also in evidence that all of the parties knew and agreed to the boundary so marked and established by Redelius. Not any of the parties checked the legal descriptions with the actual boundary line established by Redelius.

Thereafter Mr. Olson hired one Bevilacqua to construct a fence and before doing so had Mr. Redelius show him the line and the stake on the north side and the rubble stone pillar on the south side, which had long before been pointed out both to Mrs. Olson and Mr. Cafferata.

Redelius' testimony is to the effect further that Mr. Cafferata was to buy what was east of the line so marked

off and that the line upon which the fence was later built was the agreed west line of Cafferata's land and that when the mortgage was executed to Mr. Cafferata it was understood that Cafferata would take the rest of the land east regardless of what land it was, i.e., so many feet east of the ditch.

The physical boundaries were pointed out to Mrs. Olson before Redelius deeded the residential property to her. Redelius testified:

"Q. All parties knew and you understood at the time what the agreed boundary line was? A. Yes, that is right."

Redelius further testified:

"A. A stake on the ground or several stakes were placed on the ground by my surveyor which identified the center of the ditch requiring a certain tie-in point which I do not understand, and, from that point on, two points, which would identify the north point and the ditch line and the northeast corner of the land I had my residence on. Two points were definitely established by my surveyor and a stake was driven in the front line already existing before the surveyor ever went to work and that was the corner of the rubble stone pillar. This surveyor also identified the line of the ditch which would be the highway line or the south side of the property."

Redelius further testified:

"Q. Did you intend to deed any land west of that *fence* to Mr. Cafferata? A. I did not.

"Q. You didn't know you were not qualified to follow metes and bounds in a deed, did you? A. No, but we did run a steel tape from 86.5 feet from the center of the ditch and found a stake there.

"Q. You did that yourself? A. Yes.

"Q. And you intended that the east boundary of your land would be 86.5 feet east of the center of the ditch—of the Sullivan-Kelley Ditch. Is that correct? A. Yes.

"Q. Regardless of the calls of the deed, that is the

metes and bounds, you did have the lot staked out and agreed upon, regardless of what the deed said; is that right? A. Yes."

It is in the evidence that the land was definitely staked out and agreed upon by Mrs. Olson and Cafferata and Redelius prior to the erection of the fence.

The former Mrs. Redelius married Mr. Olson in August or September of 1926 and they moved into the house or took possession of the residential property sometime in the spring of 1927. After they took possession of the premises they had built a concrete curb and put iron posts in it and had erected an iron fence. The fence cost between two hundred and fifty and three hundred dollars, and thereafter they had the particular parcel in question and the remainder of their lot filled in; which took over a thousand yards of dirt and Olson testified that at present prices it would cost approximately two thousand dollars for the fill work that was put in the triangular piece and the remainder of his lot.

The appellants have had the quiet and peaceful possession of the premises since the date of their deed to the present time and no claim was made against them or to them for the small triangular piece until just prior to the commencement of this action.

Redelius was asked the question:

"Q. What land did you turn over physically to these people that you sold, meaning Granata and Cafferata? A. Land they wanted to the east of me where I had established my residence.

"Q. That line was the line north and south from the southeast corner of the rubble stone fence to the pin established by the surveyor at that time; is that correct? A. Yes, that is right.

"Q. Since that time up to the present time to your knowledge has there been any change in that line? A. I would not know.

"Q. Do you know whether or not there was a fence established upon that line? A. Yes.

"Q. Is that fence still existing? A. Yes.

"Q. What character of fence is it? A. Wire fence with metal posts set in concrete curbing.

"Q. Is that fence on the line that you said was 65½ feet east of the center of the ditch which you used as your base line—on the north line at sixty-eight and a fraction, is what I think you said on the south side—I think you said 86½ feet on the north. From your own recollection, and you said it was about the same to the south, eighty-six and a fraction; do these measurements still obtain with reference to the center of the ditch that you used for the measuring line in laying out that boundary? A. Yes."

It appears further from the evidence that Mr. Cafferata was talking about purchasing the remainder of the land east of the residential property for several months prior to the actual taking of the mortgage and later the deed. The deals were all made and concluded approximately simultaneously. At the time the land was sold to Cafferata and Granata by Redelius, Mr. Redelius pointed out to Cafferata the land east of the home as shown by the following testimony:

"Q. At that time did you point out to Mr. Cafferata the land east of your home you were selling? A. He knew the line went to the fence and everything east of the fence was to go to him.

"Q. Everything east of your fence that constituted your boundary? A. Yes.

"Q. And that was satisfactory? A. Never any question raised."

The trial court found as a matter of fact:

"That following the entry of this said decree of divorce, and within a few days after the same, the said Redelius and his former wife made the following agreement: that as there were a number of community obligations unpaid, the wife would quitclaim to the said Redelius all of the property awarded to her by the said decree; that the husband would encumber that portion on which the

residence had been constructed after setting the same off from the remainder of the tract, pay all obligations and reconvey to Ethel Bell Ione Redelius, subject to the said mortgage, the area set off by him for the use of said residence. That pursuant to said agreement Ethel Bell Ione Redelius executed a quitclaim deed in favor of Julius Redelius covering the whole of this tract (more particuarly described in Paragraph I), which said deed was placed of record.

"That said Redelius interested one M. E. Cafferata in becoming the mortgagee of the residential premises and showed the same to Mr. Cafferata, and at the same time showed to him, as a prospective purchaser, the balance of the tract east of the residential property. That prior to showing these tracts of land to Mr. Cafferata, Redelius marked a line between the two parcels so as to set one off from the other by taking certain measurements with a steel tape, and afterwards marking the boundary line by driving stakes at each end of the northerly-southerly line; that at the time Mr. Cafferata saw the property, the boundary had been marked and was shown to him. That the unimproved parcel east of the residential premises was and is approximately 150 feet in depth on the western boundary, thence follows the curve of the highway to the eastern boundary which is approximately 104 feet in depth and being approximately 242 feet on its northern boundary."

The trial court further found:

"That thereafter and during the spring of 1927, in the month of April, the said Ethel Olson and Gustav Olson, defendants herein, employed a mason to construct a stone and cement fence along the boundary line between their property and the property acquired by Granata et al.; that before said work was begun they requested Redelius to point out the line fixed by him; that he did so and at that time noted the stakes driven by him the previous fall; that after securing this information the contractor employed by the defendants was instructed

to and did build a stone and cement base and placed therein iron posts for a fence along this line, which work was completed within a month of its commencement; the said defendants at the time filled and levelled the entire area of ground which comprised the residential tract as described in Paragraph IV aforesaid, together with the area along the boundary line adjacent to their premises as well; that the approximate cost of all of this work was one thousand dollars, and that the same was done with full knowledge and without objection by Cafferata et al.

"That the defendants, at the time they requested Redelius to mark the line for them, did not do so with the purpose of *settling an uncertainty,* which had arisen as to a boundary line, but were interested in having the boundary, called for by their deed, marked for the purpose of constructing a fence thereon, that from the date of the completion of the fence in 1927 and until the year 1947 neither the defendants nor plaintiffs or plaintiffs' predecessors in interest questioned the line between the parcels of property, or had any occasion to do so; the defendants continued to use the residence as their home and the parcel east of their home remained unimproved and unused except for rental of the premises for placing of signboards for advertising; that there is no proof that defendants paid or intended to pay taxes on the area in dispute."

We are of the opinion that the trial court erred in applying the law to the undisputed facts of the case. We think the case falls squarely under the rule of estoppel set forth in the case of Small v. Robbins, 33 Nev. 288 et seq., 110 P. 1128, 112 P. 274, 123 P. 770.

There can be no question from a perusal of the evidence that a dividing line was established between the property of the predecessors of the plaintiffs and the defendants by Redelius through whom both the plaintiffs and the defendants obtained their title; that the said dividing line was agreed to irrespective of the metes and

bounds survey and accepted as the common boundary and the dividing line between the respective parties for a period of many years and more than the time prescribed by limitations; that the defendants, appellants here, made valuable improvements upon the property with reference to said established line with the knowledge and acquiescence of Cafferata and Granata, the predecessors in interest of the plaintiffs, respondents here.

"Where, as in this case, a dividing line was established between the property of appellants and respondent by the act of one through whom appellants deraigned title and was acquiesced in by respondent, which was not in fact the true line according to their respective deeds, in accordance with which they or their grantees occupied their respective lands for a time in excess of that prescribed by the statute of limitations, and immediately after the establishment of such line the respondent makes valuable improvements with reference to such line, on the land supposed to be hers, with the knowledge of the one who established said line, he and his successors in interest are conclusively estopped from questioning it as the true line." Small v. Robbins, 33 Nev. 300, 110 P. 1129, and cases cited.

The case of Quinn v. Small, found in 38 Nev. 8, 143 P. 1053, is also in point as to estoppel.

Inasmuch as the principle of estoppel applies in this case, we feel it is not necessary to discuss the other defense, that of adverse possession.

The judgment of the trial court will be reversed and it is ordered that the appellants have judgment to the strip of land in question.

HORSEY, C. J., and BADT, J., concur.

EATHER, J., being absent on account of illness the Governor assigned Honorable CLARK J. GUILD, Judge of the First Judicial District to sit in his stead.